THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* RAYMOND BYRD, Defendant-Appellee.

First District (4th Division)    No. 63218

Opinion filed April 7, 1977.—Rehearing denied May 5, 1977.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, David A. Novoselsky, and Robert Handelsman, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (David W. Hirschboeck, Assistant Public Defender, of counsel), for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

Raymond Byrd, defendant, was charged with unlawful use of weapons. (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(4).) Defendant filed a motion to suppress evidence and, following a hearing, the trial judge sustained the motion. The State appeals pursuant to Supreme Court Rule 604(a)(1) (Ill. Rev. Stat. 1973, ch. 110A, par. 604(a)(1)).

We affirm the trial court.

At the hearing upon the motion to suppress, Officer Sulky of the Chicago Police Department testified that on October 20, 1974, he observed defendant, who was wearing a silver colored, waist length, leather jacket, walking along the intersection of 61st and Racine Streets. Defendant was not behaving in a manner which was unusual or suspicious. Sulky stated that his attention was drawn to defendant because the day before he had heard a police radio broadcast alerting him to look out for a suspect who was involved in an armed robbery that had taken place at 71st and Halsted Streets. He asserted that the place where the armed robbery occurred was seven blocks from where he observed defendant.[1]

Further, he claimed that the radio alert described the suspect as

---

[1] We take judicial notice of the fact that the location of the armed robbery was approximately 14 blocks from where defendant was observed by Officer Sulky.

wearing a silver colored,[2] waist length, leather jacket. In addition, the physical characteristics of defendant as to height, weight and complexion were similar to those of the suspect described in the radio broadcast. Consequently, he decided to stop defendant.

As Sulky approached, he noticed a small bulge in defendant's pants pocket. Sulky conducted what he characterized as a "protective search." As he patted down the defendant, he felt a hard bulge in the shape of a small gun. Sulky reached into defendant's pocket, recovered a small automatic pistol, and thereupon placed him under arrest. Sulky did not tell defendant that he was under arrest prior to the search.

At the close of the evidence, the trial judge sustained defendant's motion to suppress the gun as evidence.

The State contends that there was probable cause to arrest defendant since he matched the description of the armed robbery suspect, and accordingly the trial court should have denied the motion to suppress. We believe, however, that there is a threshold issue which must be ruled upon: whether Officer Sulky's actions in stopping and searching defendant, prior to arresting him, were reasonable under the circumstances. If the stop and search of defendant was unreasonable, then we need not address ourselves to the issue of whether the subsequent arrest was valid.

Following the United State's Supreme Court's pronouncements in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889, our legislature enacted two statutes codifying the rules relating to stop and search situations. These statutes provide in relevant part:

> "A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102—15 of this

---

[2] The record is somewhat ambiguous as to whether the police broadcast specifically mentioned the color of the jacket as being silver or whether the defendant was wearing a silver colored jacket at the time Officer Sulky observed him. The testimony in relevant part, as elicited from Officer Sulky was as follows:

"A. The date prior to my having encountered this individual I recalled a look-out message being broadcasted [*sic*] for an Armed Robbery * * * the description of one of the offenders included a leather, waist length jacket, the Defendant also fit the approximate height, 5 foot 6 and weight, 130 to 140 pounds, also, light complexion, that's why *I stopped the individual.*

Q. And *this individual* wanted for the Robbery, what type of jacket was he wearing?

A. A silver leather waist length jacket.

Q. And you say further that the Defendant in Court matched the height and weight description of the offender wanted on the Robbery charge?

A. Yes.

The Court: Was he wearing the jacket on the day in question?

A. Yes, that's what drew my attention to him." (Emphasis added.)

Code, and may demand the name and address of the person and an explanation of his actions." Ill. Rev. Stat. 1973, ch. 38, par. 107—14.

"When a peace officer has stopped a person for temporary questioning pursuant to Section 107—14 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons." Ill. Rev. Stat. 1973, ch. 38, par. 108—1.01.

■■ It is clear that a police officer's conduct in a stop and search situation must be governed by the standard of reasonableness. In determining the reasonableness of. the stop and subsequent search of defendant in the instant case, our inquiry is directed to "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio* (1968), 392 U.S. 1, 20, 20 L. Ed. 2d 889, 905, 88 S. Ct. 1868, 1879.

## I.

■■ In order to justify the initial stopping of defendant in the case at bar, Officer Sulky had to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (*Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880.) In *Terry*, the court found that the officer's observation of the defendant and his companions walking up and down the same street and peering into a store window approximately 24 times warranted a reasonable suspicion on the officer's part that a crime was about to be committed. The court therefore held that the officer's detention of defendant was proper under the circumstances. In the instant case, the State contends that under the principles of *Terry*, the radio broadcast describing a robbery suspect in a manner which matched defendant in physical characteristics and attire are the specific facts warranting Officer Sulky's initial stopping of defendant.

However, the situation in the present case is readily distinguishable from that in *Terry*. Here, by the officer's own admission, defendant was neither committing a crime nor did he appear as if he was about to commit one. Defendant merely was walking down the street. In *Terry* the court specifically noted that there was nothing suspicious about a man walking down the street. Rather, it was the numerous repetitions of the walks up and down the same street and peering into the store window which justifiably aroused the suspicions of the police.

The facts in *People v. Moorhead* (1974), 17 Ill. App. 3d 521, 308 N.E.2d 381, parallel those in the instant case. In *Moorhead* the police stopped the defendant approximately three hours after hearing a report of a cleaning

store robbery. Defendant was walking down a street, located approximately 2½ miles from the location of the crime. The officers justified their stop of defendant because of a purported likeness of defendant to the general description of the suspect. Further, the police noted that defendant was carrying a sweater over his arm as if enroute to a cleaning establishment. The court found that these factors, combined with the remote time and place of defendant's seizure, did not comport with the requirements of specific information as prescribed by *Terry*.

■■ In the case before us, we likewise find the specificity requirement unfulfilled. Although it was implied at the hearing that defendant matched the physical characteristics of the armed robbery suspect, the general description of a 5'6" man with a light complexion, weighing approximately 130 pounds, could fit a myriad of individuals. Furthermore, the testimony of Officer Sulky is ambiguous as to whether the radio broadcast specifically mentioned that the waist length, leather jacket worn by the suspect was silver in color. Even assuming that the color was reported, the record is devoid of any evidence indicating that such a jacket was unique. Our doubts in this regard must be resolved in favor of the defendant. (See *People v. Talley* (1975), 34 Ill. App. 3d 506, 340 N.E.2d 167.) We further note that defendant was stopped a full 24 hours after the radio broadcast in an area that was approximately 14 blocks from the location of the robbery. As in *Moorhead*, the general description, combined with the remote time and place of defendant's seizure, compels a finding that the officer's stop of defendant was unreasonable.

## II.

■■ Under the facts of this case Officer Sulky's search of defendant pursuant to his observation of a bulge in defendant's pants pocket was not permissible under the standards prescribed by section 108—1.01 of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 108—1.01; see *People v. Moorhead* (1974), 17 Ill. App. 3d 521, 308 N.E.2d 381). Therefore, the trial court properly sustained defendant's motion to suppress the gun as evidence.

We are keenly aware of the need for an alert and aggressive police force, intent on shielding the community from criminal conduct. However, security is never an absolute in a free society which abhors intrusions upon constitutionally guaranteed rights.

For the foregoing reasons, the judgment of the trial court sustaining defendant's motion to suppress is affirmed.

Affirmed.

JOHNSON and ROMITI, JJ., concur.