THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LEROY WOODS *et al.*, Defendants-Appellants.

First District (3rd Division)    No. 77-322

Opinion filed July 5, 1978.

Carl P. Clavelli, Jonathan E. Shimberg, and Jeffrey M. Lerner, all of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Kenneth T. McCurry, and Suzanne Philbrick, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

The defendants, Leroy Woods and Nathaniel Woods, along with William Monroe, were charged in a two-count indictment with the attempt murders of Leslie Bartley and his wife, Patricia Bartley. (Ill. Rev. Stat. 1973, ch. 38, pars. 8—4, 9—1.) Following a bench trial in the Circuit Court of Cook County, the defendants were found guilty as charged; each was sentenced to serve concurrent terms of not less than four years and not more than 12 years in the penitentiary. Monroe was acquitted of both charges.

The defendants contend that the evidence was insufficient to prove, beyond a reasonable doubt, that they possessed the requisite intent to murder either of the complaining witnesses. They further contend that the trial court erred in refusing to permit Nathaniel Woods to testify concerning a prior altercation between himself and Leslie Bartley, and that their convictions are inconsistent with the acquittal of the co-defendant, William Monroe.

Leslie and Patricia Bartley were tenants in a building owned by Nathaniel Woods and located near 60th Street and Justine Avenue in Chicago. The record discloses that on the morning of March 21, 1975, the Bartleys and Nathaniel Woods appeared in court in connection with a matter not directly related to this cause, and that there had been problems between them in the past.

Leslie Bartley testified that he and his wife had just stepped off a bus at 60th and Ashland Avenue (one street west of Justine) at about 12:30 p.m. on March 21, when he observed the defendants and Monroe getting out of their cars parked along 60th Street, near the alley between Ashland and Justine. He testified that all three of the men were carrying clubs. Mr. Bartley told his wife to run ahead as the three approached and he proceeded toward the alley. He related that he saw Nathaniel Woods reach for a gun in his pocket, whereupon the witness grabbed a trash can and threw it at Nathaniel, knocking him to the ground and causing him to drop both the gun and the club. As Mr. Bartley went toward Nathaniel, Leroy Woods, a brother, drew a gun and fired a shot toward the witness' stomach; Mr. Bartley was not struck by the gunfire. The witness stated that as he was fleeing down the alley he saw Monroe draw a gun. As he continued his flight through a vacant lot, which fronted on Ashland Avenue, Mr. Bartley turned and saw all three men standing side by side in the alley, firing their guns at him. Again, he was not injured. When he reached Ashland, the witness hailed a police car; he and the officer then

proceeded on foot to the corner of 60th and Ashland. From the corner he saw the three entering their cars near the alley and he pointed them out to the officer. The officer called for the men to stop, but they drove off in their automobiles. Monroe's vehicle proceeded north through the alley, while the vehicle occupied by the defendants proceeded south through the alley. Mr. Bartley further testified that as the defendants' car drove into the alley, it came toward him and the officer, causing the officer to have to jump from its path. He later identified each of the three men in lineups conducted at the police station.

Patricia Bartley testified that as the three men armed with clubs approached them on the street, she ran to the corner of 60th and Justine at the insistence of her husband. As she entered a store located on Justine a few feet from 60th Street, to summon help, she heard four gunshots, but she did not see what occurred in the alley. After telling someone in the store to telephone the police, Mrs. Bartley returned to the alley and, after entering it, she observed the defendants' car approaching. When the car was about 20 to 30 feet from her, she observed Leroy Woods extend his hand from the front passenger window and point a gun at her. She heard him fire two shots; she did not see flashes and she was not struck by a bullet. She testified that she then proceeded to Ashland Avenue, where she encountered her husband in the company of a police officer. She later identified Leroy Woods and William Monroe in police lineups. She did not identify Nathaniel Woods because she knew him already as her landlord.

Chicago Police Lieutenant Robert Reilly testified for the State that he was a police sergeant in uniform on the date of the offenses and that he was driving a marked police car northbound on the 6000 block of Ashland Avenue. He stated that his car window was open and he heard several gunshots fired in a sporadic manner. At that time Leslie Bartley hailed his vehicle and, after a conversation with Bartley, he proceeded on foot with Bartley to the corner of 60th and Ashland. He observed three men entering two automobiles. Bartley informed him that these men had fired the gunshots at him. After radioing for assistance, the officer ran toward the alley with his gun drawn and ordered the three men to stop. However, the automobile driven by Monroe sped north into the alley, while the automobile driven by Nathaniel Woods, with Leroy Woods as a passenger, proceeded directly toward him and turned southward into the alley, 15 to 20 feet in front of the witness. The officer testified that he fired a single shot at the wheels of the car as it turned in front of him, and later inspection of the vehicle indicated that one of its tires had been struck by a bullet. Officer Reilly saw the defendants' car eight to ten minutes later at 64th Street and Loomis Avenue, where it had been stopped by Officer Ribich. He also testified that when he first observed the defendants

and Monroe, none of them appeared to be carrying a weapon, and a search of the immediate area of the incident failed to locate any weapons.

Chicago Police Officer Henry Ribich testified that he and his partner observed the defendants' car at 63rd and Bishop about two minutes after receiving a radio dispatch relating to a vehicle of the same description. After a six-block chase at relatively high speeds, during which his squad car had its emergency equipment in operation, the defendants' car was brought to a stop at 64th and Loomis. During the chase the officer observed a handgun being thrown from the window of the passenger seat occupied by Leroy Woods; he also saw what appeared to be an axe handle and a grey metal object thrown from the driver's window where Nathaniel was seated. After the defendants' arrest, Ribich returned to the area where these items had been discarded and there retrieved a handgun containing five live rounds and one spent shell, an axe handle and a metal rod. These items were admitted into evidence at the trial. Leslie Bartley identified the axe handle and the gun as those which Nathaniel had at the start of the incident.

Both of the defendants and Monroe testified. Their testimony was substantially identical. They indicated that they had met on 60th Street near Nathaniel Woods' building and, after parking their cars, they decided to have breakfast. At this point they observed the Bartleys walking along 60th Street toward Justine. Nathaniel Woods decided he wished to speak to the Bartleys about rent which they owed him and about moving from his building. Nathaniel Woods testified that he approached the Bartleys carrying a stick because Leslie Bartley had beaten him a week or two before. He denied that he pointed the stick at Bartley. Leroy Woods and William Monroe stated that none of the three men carried any weapons; Nathaniel indicated that while he carried the stick, which was not the axe handle introduced into evidence, he did not carry a gun. As the three approached the Bartleys, Mrs. Bartley ran down the street and Mr. Bartley picked up a trash can and threw it at Nathaniel Woods, knocking him to the ground. The three testified that Bartley began running down the alley. Although they chased after him, they were unable to catch him and they returned to their cars. Monroe testified that he drove from the scene in a northerly direction through the alley and was stopped by police at 59th Street near the alley entrance. He said the police found no weapon on his person or in his car. The defendants testified that they drove from the scene in a southerly direction through the alley. Each denied seeing a police officer as they drove off. They further denied seeing Mrs. Bartley in the alley or firing any shots at her. The three men also denied firing shots at Mr. Bartley as he fled through the alley into the vacant lot. The defendants also stated they did not see or hear the police

car driven by Officer Ribich following them because of radio and air-conditioning noise inside their car.

Lieutenant Reilly was also called as a defense witness. He indicated that he heard no shots fired from the defendants' car as it sped down the alley.

■■ We disagree with the defendants' contention that the evidence failed to prove beyond a reasonable doubt that they intended to murder the Bartleys. It is established that a person who fires a gun "at or toward" another, either with malice or total disregard for human life, may be convicted of attempt murder. (*People v. Munoz* (1976), 44 Ill. App. 3d 339, 358 N.E.2d 82; *People v. Mimms* (1976), 40 Ill. App. 3d 942, 353 N.E.2d 186. See also *People v. Nickolopoulos* (1962), 25 Ill. 2d 451, 185 N.E.2d 209.) While specific intent must be demonstrated (*People v. Henry* (1971), 3 Ill. App. 3d 235, 278 N.E.2d 547), it may be inferred from the character of the assault and the accompanying circumstances. Questions of fact which arise concerning whether or not intent has been shown are for the trial court to resolve. (*People v. Mimms.*) The cases cited by the defendants are distinguishable from the instant case. Here we are concerned with testimony indicating that the defendants drew guns and fired them at the complaining witnesses. Evidence of such conduct was altogether lacking in one of the incidents related in *People v. DeSavieu* (1973), 14 Ill. App. 3d 912, 303 N.E.2d 782, where in the defendant fired a gun twice and a tree branch fell to the ground and there was no evidence of the shots being directed toward the witnesses. The testimony was inconclusive in view of all the facts involved in *People v. Henry*, where there was conflicting testimony from the complainants regarding the direction in which the shots were fired.

The record here discloses that there was evidence that Leroy Woods shot his gun toward the stomach of Leslie Bartley after Bartley knocked down Nathaniel Woods for trying to draw a gun. Further evidence indicates that both defendants and Monroe fired at Mr. Bartley as he was attempting to flee from them. This evidence is corroborated by Lieutenant Reilly's testimony that he heard several shots fired from the direction of the incident, and by the testimony of Patricia Bartley concerning what she heard while at the store on Justine.

While Mrs. Bartley's testimony that Leroy Woods aimed his gun at her and fired it twice in her direction is essentially uncorroborated, it is not essentially incredible. The defendants say that she must have heard the shot fired by Lieutenant Reilly. This suggestion, however, contradicts her testimony that she heard two shots, as well as requiring one to believe that Reilly's shot was fired after the car had entered the alley. Reilly testified that he shot at the car prior to its entry into the alley.

■■  On the whole we view the evidence as proof, beyond a reasonable doubt, that both Leroy and Nathaniel fired their guns at Leslie Bartley, and that Leroy shot his gun at Patricia Bartley while fleeing the scene of the offense and while a passenger in the car driven by his brother. Therefore, there is a sufficient foundation upon which to hold each of the defendants responsible for the attempt murders charged by the indictment.

The contention that the trial court improperly denied testimony of Nathaniel Woods regarding the circumstances which brought the parties to court on the morning of the assaults, is also without merit. The defendants' brief indicates that the proceedings that morning related to an attack by Leslie Bartley upon Nathaniel a week or two prior to the court appearance. It is claimed that the refusal to admit this testimony deprived them of the opportunity of showing that they were acting in self-defense at the time relevant to the instant cause.

■■  The record reveals that the defendants and Monroe predicated their defense to the charges of attempt murder upon the denial of any assault upon the Bartleys. The question of self-defense is being raised now for the first time and should not be considered by this court since it should have been raised as an affirmative defense. (See *People v. Abrams* (1971), 48 Ill. 2d 446, 271 N.E.2d 37; Ill. Rev. Stat. 1977, ch. 38, pars. 7—1, 7—14.) Furthermore, the issue was again waived insofar as the defendants failed to raise it in their post-trial motion. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) In any event, we fail to see how the alleged error in any way prejudiced the defendants, for testimony regarding the prior altercations was subsequently given by Nathaniel Woods.

■■  Finally, the defendants contend that their convictions ought to be reversed because they are inconsistent with the acquittal of Monroe. The evidence as to the guilt of the defendants and that concerning the guilt of Monroe, however, is not in all respects identical. While Mr. Bartley indicated that Monroe drew a gun and fired it in the direction of Bartley, there was evidence that the matters were confused during the incident. The trier of fact could well have concluded that Bartley might have been mistaken as to the conduct of Monroe. Aside from the fact that Monroe was not a participant in the assault upon Mrs. Bartley, other distinctions are found relating to the overall view of the evidence. There was no evidence that Monroe willingly tried to escape police pursuit; no weapons were found on his person or in his car. On the other hand, three weapons were seen being thrown from the defendants' car as they attempted to outrun the police vehicle. On this record, there is sufficient distinction between the evidence inculpating the defendants and that inculpating Monroe, and it cannot be said that the acquittal of the latter raises a

reasonable doubt with respect to the guilt of the defendants. *People v. Hardemon* (1977), 46 Ill. App. 3d 1052, 361 N.E.2d 680.

■■  It appears in the record that the trial court was of the mistaken belief that the minimum sentence which may be imposed upon a conviction of attempt murder is a term of four years imprisonment. (Ill. Rev. Stat. 1977, ch. 38, par. 8—4(c).) Recently the Supreme Court held that while the maximum sentence which may be imposed for attempt murder is specified, the minimum sentence is not set forth. (*People v. Moore* (1978), 69 Ill. 2d 520, 372 N.E.2d 666.) Therefore, we believe that justice is served by remanding this cause to the trial court for reconsideration of the sentence in light of the *Moore* decision.

For the foregoing reasons, the judgments entered on the findings of guilty on both counts of the indictment are affirmed, and the cause is remanded to the Circuit Court of Cook County for reconsideration of the sentences in light of *People v. Moore*.

Affirmed and remanded.

McNAMARA and SIMON, JJ., concur.