THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DAVID STARKS, Defendant-Appellant.

Second District   No. 2—87—1089

Opinion filed October 26, 1989.

Daniel D. Yuhas, James E. Chadd, and Theodore A. Gottfried, all of State Appellate Defender's Office, of Springfield, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and

Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, David Starks, was charged by indictment with two counts of attempted murder (Ill. Rev. Stat. 1985, ch. 38, par. 8—4) and one count each of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)) and aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4). Following a jury trial, he was acquitted of one count of attempted murder and convicted of all remaining counts. He was sentenced to concurrent terms of 12 years for the attempted murder and armed robbery convictions and five years for the aggravated-battery conviction. We affirm.

Carol Flynn was working in the kitchen of her home on May 2, 1987. Four or five times throughout that morning, she looked out her window to see a man walking back and forth in the church parking lot behind her home. Later, Flynn left her house through the back door, carrying a garbage bag and her purse, which contained approximately $285 in cash. As Flynn approached her garbage can, the man that she had seen in the church parking lot walked up next to her, showed her a gun, and demanded her purse. Flynn refused. A struggle for the purse ensued. After the man succeeded in winning possession of the purse, he fired two shots, neither of which struck Flynn.

The gunman fled on foot, pursued by Flynn, who was screaming for help. The man dropped his gun, and when he paused to pick it up, he was caught by Flynn. The man punched Flynn in the mouth and fired one shot in the air before he ran off in an easterly direction.

Flynn then notified the police of the occurrence. Sergeant Perkins of the Aurora police department arrived at the scene and was given a description of the assailant via radio dispatch: black male, 5 feet 11 inches, 160 pounds, wearing gray jacket and slacks and black and white shoes. The assailant also wore one black glove with the fingers cut off.

Sergeant Perkins proceeded east and parked his police vehicle near an apartment building approximately two blocks east of the scene. This building had been the location of much criminal activity in the past. As Perkins waited in his vehicle, he saw a car containing four black men about to leave the building's parking lot. Perkins noticed that the front seat passenger was of the approximate height and weight of the suspect. Perkins made eye contact with the passenger, who then slid down in his seat until only the top of his head was visi-

ble. After the car pulled away, Sergeant Perkins followed it and requested back-up units.

A few blocks away, Sergeant Perkins pulled over the suspect vehicle. He then requested the driver to approach the squad car and patted the man down for weapons. By this time, Officers Krueger and Kenner had arrived. These officers had received a radio broadcast from Sergeant Perkins to the effect that he had stopped a vehicle containing a person who matched the description of the armed robber. Officer Kenner approached the stopped vehicle on the passenger side and noticed that the front seat passenger, David Starks, was wearing gray slacks. Officer Kenner drew her gun and ordered Starks out of the car. Starks was patted down and handcuffed. Eventually, all four men in the car were cuffed. A search of the car unearthed one fingerless black glove and a .22 caliber semiautomatic pistol. A later search of defendant at the police station revealed $288.59 in cash.

Mrs. Flynn was brought to the scene of the traffic stop in a squad car. She there identified Starks as her assailant. Starks was then transported via paddy wagon to the scene of the struggle over the pistol. There, James Barber, who had witnessed the action from his apartment, also identified Starks as the assailant.

Defendant first contends that he was arrested without probable cause and that, consequently, the evidence seized as a result of that arrest should have been suppressed. Defendant argues that Sergeant Perkins was not justified in conducting the initial traffic stop. Continuing, defendant maintains that Officer Kenner did not have probable cause to arrest him after the traffic stop.

■ The governing principles of an investigatory stop are well established. In appropriate circumstances, and in an appropriate manner, a police officer may approach an individual for purposes of investigating possible criminal behavior even without probable cause for arrest, provided that the officer's decision to stop is based on specific and articulable facts which, when taken with rational inferences from those facts, reasonably warrant the investigative intrusion. (*Terry v. Ohio* (1968), 392 U.S. 1, 20-21, 20 L. Ed. 2d 889, 905-06, 88 S. Ct. 1868, 1879-80; *People v. Vena* (1984), 122 Ill. App. 3d 154, 160.) The reasonableness of a stop is dependent upon whether the facts available to the officer warrant a person of reasonable caution to believe that the action taken was appropriate. (*Terry*, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880; *Vena*, 122 Ill. App. 3d at 160.) A mere hunch or inarticulable suspicion is not sufficient. *Vena*, 122 Ill. App. 3d at 160.

■ The *Terry* rules regarding the permissible use of an investiga-

tory stop and the attendant frisk for weapons have been codified in sections 107—14 and 108—1.01 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, pars. 107—14, 108—1.01). A police officer, after having identified himself as such, may lawfully stop a person in a public place for a reasonable period when he reasonably infers from all the circumstances that the person is about to commit or has committed an offense. (Ill. Rev. Stat. 1987, ch. 38, par. 107—14; *Vena*, 122 Ill. App. 3d at 161.) If the officer reasonably suspects that he is in danger of attack, he may search a person for weapons during an investigatory stop. Ill. Rev. Stat. 1987, ch. 38, par. 108—1.01.

Sergeant Perkins received a radio transmission about the armed robbery minutes after the offense occurred. He proceeded to a location 1½ blocks east of the crime scene, the direction in which the assailant was seen running. The building in front of which he parked was the location of much criminal activity in the past and was also the home of a possible suspect in several other area robberies. He saw defendant, who fit the general description of the assailant, act suspiciously by sliding almost out of view when he was seen by Perkins. We believe that these facts could raise an articulable suspicion in Sergeant Perkins, a 12-year veteran of the Aurora police department, that defendant had been involved in the armed robbery.

Defendant argues that Perkins could not reasonably suspect that defendant was the assailant. Perkins testified that he saw defendant seated in a car and determined that defendant matched the height and weight description of the suspect. Defendant cites *People v. Byrd* (1977), 47 Ill. App. 3d 804, for the proposition that general height and weight descriptions that could apply to numerous individuals are inadequate to raise the articulable suspicion needed for a *Terry* stop. However, *Byrd* is distinguishable from the case before us. In *Byrd*, an assailant was described as a man, 5 feet 6 inches, with a light complexion, weighing approximately 130 pounds. (*Byrd*, 47 Ill. App. 3d at 808.) As in the case before us, the description could fit a myriad of individuals. However, in *Byrd*, the defendant was stopped 24 hours after the robbery and 14 blocks from the scene of the robbery. The court held that the general description, coupled with the remote time and place of the stop, compelled the finding of unreasonableness. (*Byrd*, 47 Ill. App. 3d at 808.) Here, we do not have such aggravating circumstances. While Sergeant Perkins may have relied on the general description, he first spotted defendant approximately 20 minutes after the robbery and 1½ blocks from the scene of the assault. We do not have the remoteness of time and place present here. We believe

that an individual matching a general height, weight and racial description may be adequate to raise an articulable suspicion in a police officer if such sighting is not unreasonably removed in time and space from the crime. See *People v. Bryant* (1988), 176 Ill. App. 3d 809, 816.

Defendant also argues that the fact that he slouched in his seat until only the top of his head was visible would not lead a reasonable person to believe that he was involved in criminal activity. Taken by itself, such an action may not be suspicious. However, combined with the description possessed by Perkins, and the time and location of the action in relation to the crime, Sergeant Perkins, an experienced officer, could reasonably view that action as suspicious, and the combination could raise an articulable suspicion justifying a *Terry* stop. See *People v. Jackson* (1986), 145 Ill. App. 3d 789, 793.

Defendant further contends that the police lacked probable cause to arrest him after the traffic stop. Defendant argues that he was "arrested" when he was forced to leave the car at gunpoint and was handcuffed. At that point, the police had nothing more than Sergeant Perkins' suspicion that a passenger in the car matched the general description of the assailant. We do not agree with defendant's characterization of the situation; nor do we agree with defendant's contention here.

Officer Kenner had heard the radio dispatch of the assailant's description. She had also heard Sergeant Perkins' radio transmission regarding the car containing a person matching that description. When she arrived at the scene, she walked up to the stopped vehicle and looked in the front passenger window. She saw defendant wearing gray slacks, which matched the description of the assailant. At that time, Officer Kenner ordered defendant out of the car at gunpoint, patted him down for weapons, and handcuffed him. The other passengers were similarly patted down, handcuffed and detained.

■■ ■ We view the actions of Officer Kenner not as an arrest, but as a *Terry* stop. Defendant relies on the fact that he was removed from the car at gunpoint, handcuffed, and detained to characterize this as an arrest. In general, the drawing of a police officer's weapon, his tone of voice, and the use of handcuffs on the defendant are factors which may indicate the effectuation of an arrest. (*People v. Paskins* (1987), 154 Ill. App. 3d 417, 421-22.) However, not all circumstances of handcuffing and detention constitute an arrest. (*People v. Rodriquez* (1987), 153 Ill. App. 3d 652, 659; *cf. People v. Gabbard* (1979), 78 Ill. 2d 88 (the State admitted that handcuffing an individual not suspected of any particular crime was an arrest).) These factors

are not conclusive, and even a combination of the factors may not convert a *Terry* stop into a formal arrest. (*Paskins*, 154 Ill. App. 3d at 422.) It would be paradoxical to give police the authority to detain pursuant to an investigatory stop yet deny them the use of force that may be necessary to effectuate the detention. (*People v. Roberts* (1981), 96 Ill. App. 3d 930, 934.) The real difference between an investigatory stop and an arrest lies in the length of time the suspect is detained and the scope of the investigation which follows the initial stop. (*People v. Mata* (1988), 178 Ill. App. 3d 155, 160.) The general rule is that the officer's suspicions must be allayed in a reasonable time; if they are not, the officer must allow the person to leave or make a full arrest. *Mata*, 178 Ill. App. 3d at 160.

In this case, Officer Kenner approached a car that may have contained the perpetrator of an armed robbery. When she viewed a man matching the description of the suspect, it was reasonable for her to believe that the man might still be armed. (See *Paskins*, 154 Ill. App. 3d at 422.) The brandishing of the weapon and the use of handcuffs on the occupants of the car were necessary for the protection of the officers and the security of the scene. Police officers are not required to risk their safety by assuming that suspects will submit quietly to questioning. (*Roberts*, 96 Ill. App. 3d at 935.) The search of the passenger compartment of the automobile was similarly justified as a protective search for weapons since the officers knew that the robber had used a gun. (See *Michigan v. Long* (1983), 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469; *People v. Kelly* (1985), 134 Ill. App. 3d 732, 739.) In *Long*, police searched the interior of an automobile, including the glovebox, for weapons after viewing a large hunting knife on the floorboard of the car. The supreme court upheld the search, stating that an area search limited to seeking weapons is permissible when the officer has "an articulable suspicion that the suspect is potentially dangerous." (*Long*, 463 U.S. at 1052 n.16, 77 L. Ed. 2d at 1222 n.16, 103 S. Ct. at 3482 n.16.) In the case before us, the police officers were well aware of the potential danger involved in detaining a suspected armed robber. The search for weapons in the interior of the car was proper.

Further, the length of the detention was not unreasonable. During a detention, police must diligently pursue an investigation likely to confirm or dispel their suspicions quickly; a detention too long in duration may not be justified as an investigative stop. (*United States v. Sharpe* (1985), 470 U.S. 675, 686, 84 L. Ed. 2d 605, 615, 105 S. Ct. 1568, 1575.) The record shows that Sergeant Perkins made the traffic stop at approximately 12:55 p.m. Within 10 minutes, the victim ar-

rived at the scene and identified defendant. This brief period of detention was only minimally intrusive. See *Sharpe*, 470 U.S. 675, 84 L. Ed. 2d 605, 105 S. Ct. 1568 (a 20-minute detention by police upheld).

■ The trial court found that the police had probable cause to arrest defendant. The evidence seized as a result of the stop and the arrest was therefore not excluded. Unless a trial court's finding on a motion to suppress is determined to be manifestly erroneous, a reviewing court will not disturb it. (*Rodriquez*, 153 Ill. App. 3d at 660.) The finding here was not manifestly erroneous. Defendant fit the general description of the assailant, was identified as the assailant by the victim, and was in a car containing a gun similar to that used in the armed robbery. We will not disturb the trial court's finding.

Defendant next contends that the State failed to prove the intent necessary to convict him of attempted murder. Defendant argues that the evidence shows that he only fired the shots to frighten the victim and did not intend to kill her. We disagree.

■ ■ It is well established that a person who fires a gun at or towards another, with either malice or total disregard for human life, may be convicted of attempted murder. (*People v. Woods* (1978), 62 Ill. App. 3d 381, 385.) Because specific intent can rarely be proved by direct evidence, it may be inferred from the circumstances surrounding the incident, such as the use of a deadly weapon and the character of the assault. (*People v. Koshiol* (1970), 45 Ill. 2d 573, 578.) The undisputed evidence shows that defendant fired two shots at Mrs. Flynn from point-blank range, after struggling to take her purse. The fact that neither shot found Mrs. Flynn is not conclusive. Defendant makes no claim to be an expert marksman. The question of whether defendant possessed the requisite intent is a question of fact for the jury to decide. As the verdict was not palpably contrary to the manifest weight of the evidence, we will not reverse it. See *People v. Nicholls* (1969), 42 Ill. 2d 91, 95.

Defendant finally contends that his conviction of armed robbery must be reversed based on the fact that the jury was not instructed about the mental state required as an element of the offense.

Defendant failed to object to the instructions tendered by the State, to offer alternative instructions, or to raise this issue in his post-trial motion. A defendant must both object at trial and raise an issue in a post-trial motion in order to preserve the issue for appellate review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) In addition, a party may not raise on appeal the failure to give an instruction unless he tendered it at trial. (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 180.) Because defendant failed to properly preserve this issue, it is waived.

Defendant's brief draws our attention to a decision of this court, *People v. Leonard* (1988), 171 Ill. App. 3d 380, which rejected the line of reasoning put forth by defendant in arguing this issue. Defendant has not attempted to distinguish *Leonard,* nor has he provided a new wrinkle in the rejected line of reasoning. We decline, even in the absence of waiver of this issue, to accept defendant's invitation to reconsider the *Leonard* decision. Defendant provides no reason to do so.

For these reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

INGLIS and REINHARD, JJ., concur.