NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180523-U

NO. 4-18-0523

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 14, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| DARIUS D. JONES, | ) | No. 17CF1586 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas E. Griffith Jr., |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The trial court did not err in denying defendant's motion to suppress.

¶ 2   In July 2018, after a stipulated bench trial, the trial court found defendant, Darius D. Jones, guilty of being an armed habitual criminal and sentenced him to six years in prison. Defendant appeals, arguing the court erred by denying his motion to suppress evidence obtained when he allegedly was unlawfully seized by the police. According to defendant, the handgun police recovered from him was the fruit of the illegal seizure. We affirm.

¶ 3                    I. BACKGROUND

¶ 4   On October 27, 2017, the State charged defendant by information with the offense of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2016)). On January 23, 2018, defendant filed a motion to suppress evidence, including a handgun, the police recovered during what defendant alleged was an illegal seizure of his person.

¶ 5    The trial court held a hearing on defendant's motion on February 5, 2018. Sergeant Dan Wise of the Decatur Police Department testified he responded to the area of 204 North 22nd Street in Decatur at 3:50 a.m. on October 24, 2017, because of a reported armed robbery at a Huck's gas station. While in route, the police dispatch advised him the suspect had fled west from the gas station. Wise drove toward the area of 19th and Wood Street, west of the gas station, to help establish a perimeter for a K-9 search. When he reached 19th and Wood, he turned on his emergency lights. Wise observed a tall black man wearing a black-hooded sweatshirt walking southbound on the east sidewalk directly in front of Wise. The man appeared calm as he walked by.

¶ 6    Wise testified the armed robber was reportedly a black male, approximately six feet tall, wearing a black or dark hooded sweatshirt. Defense counsel asked Wise to give a description of defendant in court. Wise testified he would say a black male, about six and a half feet tall. When asked if defendant did anything to raise suspicion, Wise responded defendant was the only individual he saw in the area. Further, he was a black male, approximately six feet tall, with a black or dark hooded sweatshirt. Wise was approximately four or five blocks from the gas station "as the crow flies." He saw defendant about seven minutes after the armed robbery call. Wise testified defendant did not appear out of breath when Wise eventually talked to defendant.

¶ 7    When questioned by the State, Wise testified defendant met the general description he had been provided of the suspect who committed the armed robbery and the area where defendant was observed was west of the gas station. Based on Wise's training and experience, the fact defendant appeared calm did not necessarily have any significance to him. After observing defendant, he asked if another unit was in the area to come and assist with stopping defendant. When asked why he did not stop defendant himself, Wise stated he needed to stay where he was

to maintain the perimeter. He noted he was able to maintain a visual on defendant from where he was stopped. Officer Jacquelyn Danner arrived within a minute and made contact with defendant. After Danner detained defendant, Wise saw no one else was immediately close to assist Danner so he went to her location.

¶ 8                When Wise arrived, defendant was standing on an elevated boulevard on the side of the street and complying with Danner's directions. Danner instructed defendant to sit down, which he did. Wise approached defendant and asked him if he had a weapon. Defendant said he did and told Wise where it was located. Wise then handcuffed defendant and removed the handgun from defendant's possession.

¶ 9                Officer Jacquelyn Danner of the Decatur Police Department testified she also received the dispatch about the armed robbery at the gas station. The suspect was described as a black male, approximately six feet tall and wearing a black-hooded sweatshirt. She responded to the general area and then received a call from Sergeant Wise who was at 19th and Wood. Wise indicated he observed a black male matching the general description of the suspect walking southbound toward Clay Street. She responded to the area and saw defendant walking southbound toward Clay Street. Defendant was not running and appeared calm. She ordered him to the front of her squad car. Defendant initially kept walking southbound and said he did nothing wrong. Danner then ordered him again to go to the front of her squad car. He walked around a vehicle that was between them and sat on the boulevard in the grass.

¶ 10                Danner testified defendant matched the general description of the suspect. She noted she was standing in the roadway and defendant was on the sidewalk, which was higher than the street. Defendant did not comply with her directions to get in front of her squad car. Instead, he sat down in a grassy area between the road and raised boulevard. She told defendant she stopped

him because he matched the general description of someone who robbed the gas station. Sergeant Wise and another officer responded to her location within two minutes of her first verbal contact with defendant. Approximately 30 seconds after sitting down in the grass, defendant indicated he had a weapon. Defendant initially provided the officers with a false name. The police eventually determined his true identity and also determined he did not rob the gas station.

¶ 11　　　　The trial court denied defendant's motion to suppress. According to the court, based on the totality of the circumstances in this case, the court found nothing rising to the level of police misconduct or police overreach. The court noted it was 3:40 a.m., seven minutes after the original radio report, and defendant was four or five blocks west of the gas station, which was the direction the suspect fled the scene, and fit the general description of the individual who committed the armed robbery. The court found the officers were justified in conducting an investigatory stop of defendant.

¶ 12　　　　On July 23, 2018, the trial court held a stipulated bench trial and found defendant guilty of the offense of being an armed habitual criminal. The court then immediately denied defendant's posttrial motion, which alleged the court erred in denying his motion to suppress evidence. The court then sentenced defendant to six years in prison as agreed to by the parties with three years of mandatory supervised release.

¶ 13　　　　This appeal followed.

¶ 14　　　　　　　　　　　　II. ANALYSIS

¶ 15　　　　A citizen has the right to be free from unreasonable searches and seizures under both the United States and Illinois Constitutions. U.S. Const., amends. IV, XIV; Ill. Const. 1970, art. I, § 6. "The cornerstone of the fourth amendment is reasonableness, which seeks to balance the interest in according discretion in enforcing the law for the community's protection and

safeguarding against invasions of citizens' privacy." *People v. Hill*, 2020 IL 124595, ¶ 19. Under the fourth amendment to our federal constitution, reasonableness normally requires a warrant supported by probable cause. *People v. Love*, 199 Ill. 2d 269, 275, 769 N.E.2d 10, 14 (2002).

¶ 16    Our supreme court has stated:

"Pursuant to *Terry*, a police officer may conduct a brief, investigatory stop of a person where the officer reasonably believes that the person has committed, or is about to commit, a crime. [*Terry v. Ohio*, 392 U.S. 1, 22 (1968).] The officer must have a 'reasonable, articulable suspicion' that criminal activity is afoot. [Citation.] Although 'reasonable, articulable suspicion' is a less demanding standard than probable cause, an officer's suspicion must amount to more than an 'inchoate and unparticularized suspicion or "hunch" ' of criminal activity. [Citation.] The investigatory stop must be justified at its inception and the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the governmental intrusion upon the constitutionally protected interests of the private citizen. [Citation.] In judging the officer's conduct, we apply an objective standard and consider, 'would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' " *People v. Timmsen*, 2016 IL 118181, ¶ 9, 50 N.E.3d 1092.

The standard established in *Terry* has been codified into Illinois law at section 107-14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/107-14 (West 2016)).

¶ 17    When reviewing the denial of a defendant's motion to suppress evidence, this court applies a two-part standard of review. *Timmsen*, 2016 IL 118181, ¶ 11. A trial court's factual

findings will only be disturbed if they are against the manifest weight of the evidence. *Timmsen*, 2016 IL 118181, ¶ 11. However, we apply a *de novo* standard of review to the trial court's ultimate legal conclusion to deny the motion to suppress. *Timmsen*, 2016 IL 118181, ¶ 11.

¶ 18 Defendant argues the trial court erred in denying his motion because the police officers illegally detained him. According to defendant's brief:

"[I]t is evident from the facts of this case that [defendant] bore, at best, a tenuous resemblance to an armed robbery suspect description that was itself insufficient to support a reasonable suspicion of criminal activity. When this is considered in light of his calm demeanor at the time of the stop, and geographic removal from the crime scene, it becomes apparent that police lacked a reasonably articulable basis to conduct an investigatory stop. And, because the State cannot prevail on remand without the evidence obtained as a result of the illegal stop, this Court should reverse [defendant's] conviction outright."

We note the State does not argue defendant had not been seized when the pistol was recovered. However, the State argues the seizure was lawful based on the totality of circumstances in this case. We agree with the State.

¶ 19 Defendant cites *People v. Byrd*, 47 Ill. App. 3d 804, 365 N.E.2d 443 (1977), as support for his argument the police did not have reasonable suspicion to temporarily detain him. In *Byrd*, a police officer observed the defendant wearing "a silver colored, waist length, leather jacket, walking along the intersection of 61st and Racine Streets." He was not behaving in an unusual or suspicious manner. *Byrd*, 47 Ill. App. 3d at 805, 365 N.E.2d at 444. The officer testified his attention was drawn to the defendant because the day before he heard a police radio broadcast describing a suspect in an armed robbery 14 blocks away—although the officer testified the

robbery was 7 blocks away. *Byrd*, 47 Ill. App. 3d at 805, 808, 365 N.E.2d at 444, 446. According to the officer, the robbery suspect was described "as wearing a silver colored, waist length, leather jacket." Further, the suspect's physical characteristics were similar to defendant's height, weight, and complexion. *Byrd*, 47 Ill. App. 3d at 805-06, 365 N.E.2d at 444.

¶ 20 The trial court in *Byrd* granted the defendant's motion to suppress evidence recovered as a result of the defendant's seizure. *Byrd*, 47 Ill. App. 3d at 805, 365 N.E.2d at 444. The First District affirmed the trial court's decision because the officer did not have enough information to detain the defendant. The appellate court stated:

> "Although it was implied at the hearing that defendant matched the physical characteristics of the armed robbery suspect, the general description of a 5' 6" man with a light complexion, weighing approximately 130 pounds, could fit a myriad of individuals. Furthermore, the testimony of [the officer] is ambiguous as to whether the radio broadcast specifically mentioned that the waist length, leather jacket worn by the suspect was silver in color. Even assuming that the color was reported, the record is devoid of any evidence indicating that such a jacket was unique. Our doubts in this regard must be resolved in favor of the defendant. [Citation.] We further note that defendant was stopped a full twenty-four hours after the radio broadcast in an area that was approximately fourteen blocks from the location of the robbery." *Byrd*, 47 Ill. App. 3d at 808, 365 N.E.2d at 446.

According to the First District, "the general description, combined with the remote time and place of defendant's seizure, compels a finding that the officer's stop of defendant was unreasonable." *Byrd*, 47 Ill. App. 3d at 808, 365 N.E.2d at 446.

¶ 21 The circumstances in this case are distinguishable from the situation in *Byrd* and

more in line with this court's recent decision in *People v. Turman*, 2019 IL App (4th) 170815, ¶ 41, 145 N.E.3d 473, where this court found a police officer's brief investigatory detention of the defendant was justified based on the totality of the circumstances. In *Turman*, like this case, the description of the suspect was not an exact match for the defendant when the police stopped him. However, the description of the suspect was very similar to the defendant and the defendant was within a block and a half of where the armed robbery occurred approximately 30 minutes after the armed robbery was reported. *Turman*, 2019 IL App (4th) 170815, ¶¶ 34, 40-41.

¶ 22    In this case, although defendant was six inches taller than the description given for the armed robber, he otherwise met the general description given for the suspect. He was a black male wearing a dark colored hooded sweatshirt. In addition, the suspect in the armed robbery had fled the scene on foot in a westerly direction. Defendant was found on foot approximately four to five blocks west of the gas station within minutes of the reported robbery. Finally, the police did not spot defendant in a crowd of people. Instead, he was alone, walking in the middle of the night around 4 a.m. Sergeant Wise testified defendant was the only individual he observed in the area. Based on the totality of the circumstances in this case, the police officer who temporarily detained defendant was justified in doing so. As a result, the trial court did not err in denying defendant's motion to suppress evidence recovered because of defendant's seizure.

¶ 23                            III. CONCLUSION

¶ 24    For the reasons stated, we affirm the trial court's judgment.

¶ 25    Affirmed.