THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CRAIG NEAL, Defendant-Appellant.

Second District No. 86—0353

Opinion filed May 12, 1987.

G. Joseph Weller and Mary K. Schick, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, and Barbara J. Slingerland, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Craig Neal, was convicted of robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—1) following a jury trial in Winnebago County. On appeal, defendant argues that the in-court and out-of-court identifications by complainant should not have been admitted into evidence

and he was not proved guilty beyond a reasonable doubt. We affirm.

On October 8, 1985, at approximately 7:50 p.m., the complainant, Marjorie Henderson, was walking home along Kishwaukee Avenue in Rockford when she was knocked down from behind and her purse was forcibly taken from her. Henderson immediately went across the street to a tavern and telephoned police. A tape recording of complainant's conversation with police officer Owens revealed that complainant told Owens she had been knocked down by two black teenagers, one of whom she had earlier observed, clad in a red sweatshirt, exiting a housing project. Henderson could not provide a description of the other perpetrator, although she did state that he might have been an individual she had previously observed walking alone down the other side of the street. Henderson then told Owens the direction in which the two men fled. Based on this information, Owens informed the patrol cars in the area that a robbery had occurred involving two black male teens, one wearing a red sweatshirt and the other description unknown.

Within five minutes of the telephone call, Officer Grennan arrived at the tavern and assisted the complainant. Meanwhile, other police officers proceeded to the area and shortly thereafter apprehended defendant. Grennan transported Henderson to the defendant's location, where she observed defendant in the backseat of a squad car and identified defendant as one of the perpetrators. The identification occurred within 15 minutes of the attack.

At the preliminary hearing, complainant testified that she did not see who knocked her down and was only able to observe her assailants from the rear as they ran away into a nearby alley. Complainant stated that the men were a few yards away when she first observed them, and she had them in sight for approximately three minutes before they disappeared into an alleyway. Complainant stated that the two people she had passed on the street prior to the attack were the culprits. Defendant was the person she had observed walking down the other side of the street approximately five minutes before the attack. Complainant stated that this individual was no taller than 5 feet 7 inches, dark-complexioned and wearing a black nylon jacket, reddish sweat pants and carrying a white bag across his shoulder. Complainant stated that when she identified defendant as one of her attackers she told the police officers that her identification was based on the similarity in the clothing worn by the suspect. At the hearing, complainant added that her identification was also based on the physiology of his face. Complainant stated on cross-examination that she was reasonably sure that the face she saw in the squad car was the same

as the face she saw walking along the other side of the street prior to the incident.

Prior to trial, defendant filed a motion to suppress the showup identification alleging that the showup violated his due process rights because it was unnecessarily suggestive and resulted in an irreparable misidentification. At the hearing on the motion to suppress, complainant did not recall being unable to give a description of the second individual's clothing to the police during the telephone conversation immediately after the attack. Complainant added that she was not sure whether she provided police with a description of the clothing worn by defendant prior to identifying him, although she thought she did because she had a very good look at defendant when she passed him on the street prior to the attack. Complainant indicated that her memory lapses were attributable to the fact that the incident had occurred three months earlier and she was shocked and hurt at the time of the incident. Officer Grennan testified that when he first met complainant at the tavern, she told him one subject was wearing a black leather jacket, red sweatpants and was carrying a white gym bag. On cross-examination, Grennan stated that he did not relay this description to his fellow police officers prior to the defendant's being taken into custody because he did not have time to do so. The trial court denied the suppression motion on the basis that, when viewed in the totality of the circumstances, the identification procedure was proper.

At trial, complainant's testimony regarding the out-of-court identification was substantially similar to the testimony she provided at the preliminary hearing and the motion to suppress. Complainant added that she looked carefully at defendant a couple of times when she passed him on the street and was able to get a good look at his facial features. Complainant also stated at trial that when she observed her assailants running away she recognized that their clothing was the same as that worn by the two individuals she had observed a few blocks prior to the incident. Complainant further stated that she observed the white bag and her purse in the assailants' possession as they fled. Complainant identified defendant in court as one of the robbers.

Officer Cloyd testified that in response to police communications concerning a robbery, he proceeded to the area to assist in searching for the suspects. As he drove down Christina Street, Cloyd observed a black male walking towards him carrying a white bag and wearing a black coat and red pants. As Cloyd stopped his car, he observed a purse in the street approximately 35 feet from the suspect. When Cloyd called out to the man, the subject immediately ran into a

nearby park. After pursuing the suspect for a short distance, Cloyd lost sight of him and communicated via police radio the subject's disappearance into the park to other officers in the area.

Officer Yastrab testified that he and his partner, Officer Woody, received a description of a subject running into Blackhawk Park and proceeded to search for the suspect in the park area. Yastrab stated that he observed a young black male wearing a dark jacket, maroon jogging pants and carrying a white bag over his shoulder. Upon noticing the suspect, Yastrab and Woody confirmed over the radio that the suspect was carrying a white bag. Yastrab then called to the subject, identifying himself as a police officer. The subject ran away, and Yastrab chased after him on foot before losing sight of the subject in a tree area in the park. Yastrab continued to search for the suspect until he heard Woody radio that the subject was in his custody. Yastrab added that he later recovered the white bag carried by defendant. The bag was found within a block of Cloyd's patrol car.

Officer Woody testified that when Yastrab took off on foot after the suspect, he proceeded to the end of the street in the squad car. Within a few minutes, Woody observed the suspect walking towards him. Woody told the suspect to put his hands on the car, frisked him and placed him in the squad car. Woody identified the suspect as defendant. Defendant initially denied carrying a white bag, but later admitted to having the bag when it became apparent that Yastrab had found the bag. Defendant admitted that the bag contained a flashlight, gloves, and a screwdriver. Regarding the purse, defendant denied knowing anything about a purse snatching.

Officer Bast interviewed defendant shortly after he was taken into custody. According to Bast, defendant stated that he found a purse lying in the street as he was walking from his home to a recreation center. Defendant threw the purse into the park and ran when he saw a police car approaching. Defendant claimed he ran from the police because he was afraid the police would think he was a burglar because of the tools in the bag he was carrying. Defendant signed a written statement, which was read to the jury and provided as follows:

> "I left home at about 8:45 PM and was going to Blackhawk Court on 15th Avenue. I walked between the houses to Mary Court. When I got to Martha and Clara, I found a black purse lying on the sidewalk and picked it up and I went through it as I was walking. I was walking by the Bus Company and I saw the Police coming up Christina. They went by me and stopped. I forgot to say that I threw the purse away when I was going

by the Bus Company. I threw it across the street into the park. The Police stopped and shinned [*sic*] his light at the Bus Company. I took off running across the street into the park. I ran all around the park and came out between some houses on Clara. I dropped my white bag in some bushes before I left the park. I was walking to a friend's house on Clara when the Police came up. He asked me where I left my bag. I showed them where it was and they picked it up and took me to the Police Station."

The purse was introduced into evidence and positively identified by the complainant. The white bag was also introduced and positively identified by Yastrab. Complainant was unable to positively identify the bag.

The jury found defendant guilty of robbery, and he was subsequently sentenced to two years' probation.

On appeal, defendant first argues that complainant's out-of-court identification of the defendant should have been suppressed because under the totality of the circumstances the showup confrontation was so inherently unreliable that it violated defendant's due process rights. Defendant further argues that complainant's in-court identification of defendant was irreparably tainted by the showup and should not have been presented to the jury.

 One-on-one showups are not favored and have been widely condemned because of the suggestiveness inherent in such confrontations. (*Stovall v. Denno* (1967), 388 U.S. 293, 302, 18 L. Ed. 2d 1199, 1206, 87 S. Ct. 1967, 1972; *People v. McKinley* (1977), 69 Ill. 2d 145, 151, 370 N.E.2d 1040; 1 W. LaFave & J. Israel, Criminal Procedure sec. 7.4(f) (1984).) Nevertheless, identification testimony stemming from a suggestive showup is admissible provided there is a sufficient indicia of reliability supporting the identification. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253; *People v. Lippert* (1982), 89 Ill. 2d 171, 188, 432 N.E.2d 605.) Five factors are to be considered in determining reliability: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253; *Neil v. Biggers* (1972), 409 U.S. 188, 199, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382; *People v. McKinley* (1977), 69 Ill. 2d 145, 152, 370 N.E.2d 1040.

Complainant's opportunity to view her assailants during the commission of the robbery was limited to observing their clothing and possessions as they ran from the scene. However, a short time before the crime, complainant separately observed two individuals on the other side of the street who were wearing the same clothing as her attackers. Complainant stated that she carefully looked at the individual whom she later identified as defendant and was able to recall his clothing and the physiology of his face. Consequently, although complainant did not observe the front of her attackers during the commission of the crime, her observations of their clothing as they fled were sufficient to allow complainant to identify the defendant based on her previous observance of him across the street shortly before the attack.

Regarding complainant's degree of attention, it is apparent that complainant had no forewarning of the attack and was first able to focus her attention on her assailants only after she was knocked down. However, the complainant's degree of attention to the individuals that she earlier passed on the street was acute, which is particularly relevant to the present case.

As to the accuracy of the prior description of defendant, complainant telephoned the police within a few minutes of the incident and told Officer Owens that she had just had her purse stolen by two black male teenagers. Complainant described one offender as wearing a red sweatshirt, but was unable to describe the other offender. However, she did mention, before being interrupted by Owen, that the second offender may have been a person she earlier observed walking down the other side of the street. While complainant provided only a general description of the second offender to Owens, Officer Grennan testified at the suppression hearing that complainant told him before she identified defendant that the second offender was wearing a dark jacket, maroon sweatpants, and was carrying a white bag. While we acknowledge that complainant did not recall providing this description to Grennan, we note that she was admittedly shocked and hurt on account of the incident and, furthermore, this is a question of credibility particularly suited for the trial court.

Complainant's level of certainty at the confrontation apparently was immediate and positive. Finally, the confrontation occurred within 15 minutes of the incident.

■ In support of his argument that the out-of-court identification was unreliable, defendant first points to the complainant's inability to observe the front portions of her attackers during the robbery. The inability of a witness or victim to observe or describe a perpetrator's

facial characteristics does not preclude admitting an out-of-court showup identification. (*People v. Williams* (1986), 145 Ill. App. 3d 482, 495 N.E.2d 1201; *People v. Ruffolo* (1978), 64 Ill. App. 3d 151, 380 N.E.2d 1204.) In the present case, although the complainant did not have the opportunity to view her assailants from the front during the commission of the offense, she carefully observed each of her attackers shortly before the crime. The fact that complainant did not conclusively state this to Officer Owens during her telephone call to police within minutes of the attack is readily attributable to complainant's emotional state at the time of the call. We note in this regard that Owens interrupted complainant right after she stated that the second attacker might have been an individual she earlier observed across the street.

Defendant next asserts that complainant's failure to provide a detailed description prior to identifying defendant renders the out-of-court identification unreliable. This argument ignores Officer Grennan's testimony that complainant provided him a clothing description prior to identifying the defendant. Complainant's inability to recall providing a clothing description to Grennan goes to credibility, which is properly determined by the trial court.

Lastly, defendant maintains that complainant's response on cross-examination at the preliminary hearing that she was reasonably sure that defendant was one of the perpetrators indicates the unreliability of complainant's out-of-court identification. Once again, this matter affects credibility. Furthermore, aside from this response, the testimony of complainant and the police officers at the scene of the showup is uncontradicted that complainant was immediate and positive in her identification of defendant.

In sum, our review of the pertinent factors to be analyzed in determining whether the showup identification should have been admitted at trial demonstrates that despite the complainant's limited opportunity to view her assailants during the actual commission of the crime, the totality of the circumstances supported the trial court's denial of the defendant's motion to suppress the out-of-court identification.

Having determined that the out-of-court identification was properly admitted into evidence, it necessarily follows that the trial court properly allowed complainant's in-court identification of defendant to be presented to the jury. *Manson v. Brathwaite* (1977), 432 U.S. 98, 110 n.10, 53 L. Ed. 2d 140, 151 n. 10, 97 S. Ct. 2243, 2251 n.10; *People v. Manion* (1977), 67 Ill. 2d 564, 572, 367 N.E.2d 1313.

Defendant also argues that he was not proved guilty beyond a

reasonable doubt. To the extent the defendant's argument relies on a finding by this court that the identification testimony was inadmissible, it is without merit. Furthermore, in addition to the identification testimony, the State presented evidence that defendant was approximately 35 feet from the stolen purse when first observed by police, defendant fled from the police on two occasions before being apprehended, and defendant admitted possessing the purse and searching through its contents. We believe this evidence adequately supported the jury's finding of guilt beyond a reasonable doubt.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

INGLIS and WOODWARD, JJ., concur.