FIRST DIVISION

SEPTEMBER 30, 1998

No. 1-97-0629

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

SIDNEY ROBINSON,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 96 C2 20515

Honorable

Gerald Rohrer,

Judge Presiding.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

A jury found defendant Sidney Robinson guilty of robbery and theft.  Defendant was sentenced to 15 years in prison.  In this appeal, defendant contends that: (1) defendant was illegally arrested and searched; (2) the trial court erred by dismissing the third panel of jurors; (3) impeachment evidence of defendant's prior convictions was error; (4) the trial court erred in failing to refer defendant for a Treatment Alternatives to Street Crime (TASC) evaluation at sentencing; (5) the trial court erred in sentencing defendant to 15 years in prison; and (6) defendant's theft conviction should be vacated.  For the reasons that follow, we affirm.

 FACTS

On June 30, 1996, Isidro Orozco, the victim, was returning home.  A man later identified as defendant walked towards him on the street and asked him for a cigarette.  Mr. Orozco gave defendant a cigarette and continued walking home.  Defendant followed and began gesturing for a light.  Defendant then followed Mr. Orozco inside, and when Mr. Orozco reached the door of his apartment, defendant pushed him to the ground and ripped his wallet from his back pocket. Mr. Orozco's son immediately called the police, assisted by neighbor Sheryl Jans, who had observed the defendant following Mr. Orozco.

Mr. Orozco's neighbor, Sheryl Jans, testified that she was taking her dog out for a walk when she saw a black man wearing a yellow T-shirt, shorts and sandals standing behind Mr. Orozco asking him for a cigarette.  She held the security door open and Mr. Orozco proceeded inside, followed by the defendant.  About 10 minutes later, Ms. Jans was coming back in with her dog when she again noticed the defendant as he passed by her in the foyer of the apartment building.  She testified that the foyer area was well lit.

Officers Ryan and Ruel received a radio message that a robbery occurred near Washington, Dee and Ballard in Des Plaines.  The message described the victim as a black male wearing shorts, a yellow T-shirt and sandals.  When the officers arrived, defendant was the only black male on the street and he otherwise matched the description from the radio communication. As the officers approached defendant, he told them, "I'm not the guy you're looking for, I didn't do anything."  Defendant was patted down for weapons, handcuffed and placed in a squad car.  A show-up was conducted, and Sheryl Jans identified defendant as the person she saw following Mr. Orozco just seconds before he was robbed.  The victim testified at trial that the man he saw sitting in the back seat of the police car at the show-up was the man that took his wallet, and Ms. Jans also identified defendant in court. At the police station, pay stubs from the victim's employment were recovered during an inventory search of defendant's belongings.   The jury found defendant guilty of robbery and theft, and the trial court  sentenced defendant to 15 years in the Illinois Department of Corrections for robbery.  Defendant appeals.

I

Defendant first contends that the identification of defendant and the introduction of the check stubs at trial were the products of an illegal arrest. A finding of probable cause to arrest will not be disturbed absent clear error, with due deference given to the trial court and arresting officers.  
Ornelas v. United States
, 517 U.S. 690, 134 L. Ed. 2d 911, 116 S. Ct. 1657 (1996).  A 
de novo
 review applies where defendant files a motion to quash arrest and suppress evidence and the facts supporting the judge's ruling on that motion are undisputed.
  
Ornelas
, 517 U.S. at 696-98, 134 L. Ed. 2d at 919-20, 116 S. Ct. at 1661-62.  The prosecution maintains that defendant waived this issue for review by failing to file a motion to quash arrest and suppress evidence in the trial court.  Waiver aside, the prosecution asserts that even if a motion to quash arrest had been filed, the officers had probable cause to arrest defendant for the robbery.

We will first address the State's contention that defendant's claim has been waived, barring review by this court.  We recognize the defendant did not file a motion to quash arrest and suppress evidence in the trial court.  As such, defendant has arguably waived the issue for review; however,
 a reviewing court may ignore the waiver rule in order to reach a just result.  
People v. Hoskins
, 101 Ill. 2d 209, 219, 461 N.E.2d 941 (1984).  
Accordingly, we will review this issue. Section 107-2 of the Code of Criminal Procedure provides that a valid arrest may be made when there are reasonable grounds to believe that the person to be arrested has committed a crime.  725 ILCS 5/107-2 (West 1996).  "Reasonable grounds" is synonymous with "probable cause."  
In re D.G.
, 144 Ill. 2d 404, 581 N.E.2d 648 (1991). In determining whether probable cause existed to effectuate a warrantless arrest, a court must look to the totality of the circumstances and make a practical, commonsense decision whether there was a reasonable probability that an offense was committed and that the defendant committed it. 
People v. Tisler
, 103 Ill. 2d 226, 236-37, 469 N.E.2d 147 (1984).  

Mere suspicion is inadequate to establish probable cause to arrest, but evidence relied upon by arresting officers need not be sufficient to prove guilt beyond a reasonable doubt or even be admissible at trial.  
People v. Wilson
, 260 Ill. App. 3d 364, 632 N.E.2d 114 (1994).  The determination, which considers only information available to officers before the arrest, must focus on the factual considerations upon which reasonable, prudent people, not legal technicians, act.  
People v. Henderson
, 266 Ill. App. 3d 882, 640 N.E.2d 1344 (1994).

A general description of a suspect coupled with other specific facts and circumstances that would lead a reasonably prudent person to believe that the action taken was appropriate can constitute sufficient cause to stop or arrest.  In 
People v. Wilson
, 141 Ill. App. 3d 156, 490 N.E.2d 701 (1986), police received a description of a man with a gun walking north wearing a gray hat, maroon and gray striped sweater, black pants and a black coat.  Police stopped the defendant who was walking north, and, after observing that his clothing matched the description of the suspect, searched a duffel bag the defendant had been carrying and found a gun.  The defendant argued the officers did not have probable cause to arrest him and that the search was improper.  
The court noted that police saw defendant in the area described, his clothing matched the description given, and he was walking in the direction noted in the description.  
Wilson
, 141 Ill. App. 3d at 158.  The court held the police acted properly in stopping and arresting the defendant.  
Wilson
, 141 Ill. App. 3d at 158.

Likewise, in 
People v. Starks
, 190 Ill. App. 3d 503, 546 N.E.2d 71 (1989), a defendant convicted of attempted murder and armed robbery argued that he was improperly stopped and arrested by police. The description of the robbery suspect included his race, approximate height and weight, and color and type of clothing.  The defendant was stopped and arrested in a vehicle approximately 20 minutes after the robbery and a block and a half from the scene of the crime, when a police officer noticed he matched the general description of the suspect and observed him slide down in the car seat upon seeing the officer.  The court found the stop to be reasonable based on the general description of the suspect and the fact there was a closeness of time and place.  
Starks
, 190 Ill. App. 3d at 508.  The court held "an individual matching a general height, weight and racial description may be adequate to raise an articulable suspicion in a police officer if such sighting is not unreasonably removed in time and space from the crime."  
Starks
, 190 Ill. App. 3d at 508.

 In support of his argument, defendant cites 
People v. Washington
, 269 Ill. App. 3d 862, 646 N.E.2d 1268 (1995), in which the court quashed a defendant's arrest.  However, 
Washington
 can be distinguished from the case at bar since
 the only evidence introduced in 
Washington
 to explain the detention of the defendant was the arresting officers' testimony that the defendant matched the description of the offender.  
Washington
,
 269 Ill. App. 3d at 866.  There was no evidence as to the specific description of the physical characteristics or clothing of the suspect, nor was there any evidence regarding the appearance or clothing of the defendant at the time he was stopped. 
Washington
, 269 Ill. App. 3d at 866.  The court also noted the record was silent as to the gender and race of the suspect.

The facts of 
Washington
 are in sharp contrast to the case at bar, in which police had a description of the offender, including his gender, his race and a detailed clothing description.  Police stopped defendant shortly after the incident occurred and in close proximity to the scene of the crime.  These factors serve to distinguish the present factual situation from that in 
Washington
.

Further, in the present case, the officers temporarily detained defendant for an investigatory stop until the victim and eyewitness arrived on the scene.  The officers not only had reasonable suspicion to make an investigatory stop of defendant, pursuant to 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), but they also had probable cause to arrest defendant considering the totality of the circumstances.  
People v. Free
, 94 Ill. 2d 378, 400, 447 N.E.2d 218 (1983).
 

We find, based on the record at trial, that the information relied upon by the officers before the arrest established that there was a reasonable probability that defendant committed the offense. Defendant matched the description the officers received, a black male wearing shorts, a yellow shirt, and sandals.  Further, proximity in time and place to the robbery existed.  Defendant was stopped near the scene of the robbery shortly after the crime occurred, within one half-hour.  Moreover, defendant caused the suspicion of the police to escalate when, as they approached, he immediately blurted out, "I'm not the guy you're looking for. I didn't do anything."  The historical facts known to the police at the time of their warrantless arrest amounted to probable cause to arrest defendant Robinson. 

II

Defendant claims in the alternative that plain error exists and therefore the waiver rule should be relaxed because his attorney's failure to file a motion to quash arrest and suppress evidence was ineffective assistance of counsel.

To prevail on an ineffective assistance of counsel claim, the defendant must demonstrate that his attorney's performance fell below an objective standard of reasonableness and
 that a reasonable probability exists that the result would have been different were it not for counsel's errors. 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). The scrutiny of counsel's performance must be highly deferential because of the inherent difficulties in making the evaluation and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  
Strickland
, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.

We address defendant's specific assertion that his attorney was ineffective for failing to make a motion to quash his arrest and suppress evidence.  The question of whether to file a motion to quash arrest and suppress evidence is traditionally considered a matter of trial strategy, an area left to trial counsel's discretionary judgment, and therefore one in which the court will not engage in a hindsight analysis to determine whether the decision was reasonable.  
People v. Bryant
, 128 Ill. 2d 448, 539 N.E.2d 1221 (1989). To establish that trial counsel was ineffective for failing to file a motion to quash arrest and suppress evidence, the defendant must satisfy the following two-prong test:  first, that the motion would have been granted and second, that the outcome of the trial would have been different if the evidence had been suppressed.  
People v. Morris
, 229 Ill. App. 3d 144, 593 N.E.2d 932 (1992).
    

       
  A review of the record indicates that such a motion would not have been granted based upon a lack of probable cause to arrest.  Defendant was detained by the officers because he matched the description they had received and he was in the area of the robbery a short time after it had occurred. As was noted earlier in this opinion, based on the totality of the circumstances as reflected by the record before us, we cannot agree with defendant's argument that his trial counsel should have argued at a hearing on a motion to suppress that the identifications of the defendant by the victim and the witness, as well as the check stubs, should have been suppressed as the fruits of an illegal arrest.  The record demonstrates sufficient probable cause for the arrest.  A motion to suppress would not have been successful and the presumption of sound trial strategy remains unscathed.  
People v. Steels
, 277 Ill. App. 3d 123, 660 N.E.2d 24 (1995).
  

The record further indicates that the outcome of the trial would not have been different even if the evidence that was the product of the arrest had been suppressed as there was an independent basis for the in-court identification of defendant by Ms. Jans and Mr. Orozco.  An identification requires exclusion if it is caused by impermissible suggestiveness which gives rise to the substantial likelihood of irreparable misidentification. 
People v. Lutz
, 103 Ill. App. 3d 976, 431 N.E.2d 753 (1982).  When the supreme court assesses the reliability of an identification, relevant factors it considers are the opportunity of the witness to view the offender at the time of the crime, the witness' degree of attention, the witness' description, the level of certainty demonstrated by the witness at the confrontation and the length of time between the crime and the confrontation.  
People v. Holmes
, 141 Ill. 2d 204, 565 N.E.2d 950 (1990). Furthermore, identification testimony that is the result of a show-up is admissible provided there are sufficient indicia of reliability supporting the identification.  
People v. Neal
, 155 Ill. App. 3d 340, 508 N.E.2d 452 (1987). The reliability and, hence, the admissibility of allegedly suggestive identifications must be judged by the totality of the circumstances to determine whether admission of such evidence meets the fairness standard of the due process clause of the fourteenth amendment.  
Manson v. Brathwaite
, 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977).

     The  totality of the circumstances as evidenced by this record indicates that the show-up procedure was justified and the victim and witness had an independent basis for their in-court identifications of defendant.  Applying the five factors articulated by the supreme court in 
Holmes
, first, both the witness and the victim had an ample opportunity to view defendant.  Second, both the witness and victim gave defendant a relatively high degree of attention. Third, an accurate description was given to the police immediately after the robbery. Fourth, there was a positive identification of defendant at the show-up. Fifth, less than 30 minutes passed between the robbery and the subsequent identification.  

Taking all of the above factors into consideration, the trial outcome would not have been different even if the identification evidence, which was the product of the arrest, had been suppressed, as the record contained sufficient indicia of reliability as well as an independent basis for admitting the in-court identifications of defendant by both the victim and witness.  Even unnecessarily suggestive identifications may be admitted if reliable.  
Brathwaite
, 432 U.S. 98 at 114-17, 53 L. Ed. 2d at 154-55, 97 S. Ct. at 2253-54. See 
People v. Graham
, 179 Ill. App. 3d 496, 506, 534 N.E.2d 1382 (1989) (show-up found unnecessarily suggestive; however, under the totality of the circumstances, the identification was sufficiently reliable and thus admissible).

Other than the identification evidence, the only other evidence produced as a result of the arrest was the victim's paycheck stubs from his employer, Emerald Landscaping, Inc.  We find the pay stubs were properly seized from the defendant as the result of an inventory search.  See 
People v. Mannozzi
, 260 Ill. App. 3d 199, 632 N.E.2d 627 (1994).  Thus a motion to suppress this evidence would not have been successful.  Moreover, since the in-court identifications of defendant by the victim and the witness were reliable, evidence of the paycheck stubs was cumulative and even if suppressed, could not reasonably have made a substantial difference in the outcome of the trial.

     As a general rule, trial counsel's failure to file a motion to suppress does not establish incompetent representation, especially when that motion would be futile.  
People v. Wilson
, 164 Ill. 2d 436, 454-56, 647 N.E.2d 910 (1994).  
 A defense attorney who is aware that an arrest or search is proper may reasonably view a motion to suppress as a futile effort that he or she has no obligation to pursue.  
People v. Jarrell
, 248 Ill. App. 3d 1043, 1050, 618 N.E.2d 944 (1993).  Counsel is not required to file futile motions to render effective assistance.  
People v. Muhammad
, 257 Ill. App. 3d 359, 367, 629 N.E.2d 106 (1993).  Consequently, we are not persuaded that it was ineffective assistance of counsel for defendant's attorney to choose not to file a motion to quash his arrest and suppress evidence, as based on the record, this would have been futile.

Mindful of the limited issue before us, we find based on the totality of the circumstances, the police clearly had probable cause to arrest defendant and  there was no reasonable probability that the identifications or check stubs would have been suppressed if defense counsel had filed a pretrial motion.  Defendant has further failed to show that the outcome of the trial would have been different even if the evidence had been suppressed.  The pretrial motion that counsel chose not to present was not patently meritorious and the record does not establish ineffective assistance of counsel under the 
Strickland
 test.  
People v. Downey
, 198 Ill. App. 3d 704, 713, 556 N.E.2d 300 (1990). 

III

Defendant next argues that he was denied due process and equal protection because the trial judge dismissed the entire third panel of jurors after discovering there were not enough venire members left to impanel the remaining four jurors necessary to complete the jury.  Defendant contends that this resulted in the judge giving the State the benefit of four extra peremptory challenges that were not available to the defense.

We note that this alleged error was not objected to by the defendant at the time it occurred during the trial process.  Before dismissing the third panel the following occurred:

"THE COURT: I can call it right now and we can start picking the last panel tomorrow.  You're out of peremptories.

MS. DINEEN: [DEFENSE COUNSEL] Call it right now.

THE COURT: You don't have a complete panel.  I have to do it.  I'm going to dismiss this panel.  This panel is not complete.

MS. DINEEN: Right.  We used two challenges."

Nowhere in the record when the judge excused the third partial panel does the defense make a contemporaneous objection.  In fact, when the court indicated an inclination to terminate the proceeding, the defense, rather than object, agreed.  Moreover, nowhere in the course of further discussion before the panel is dismissed does the defense object to the court's decision to excuse the jurors and continue selection of the last panel to the next day. It is not until the following morning that defense counsel indicates for the first time that she believes it was a mistake for the judge to excuse these jurors.

A fundamental concept of our adversary system is that counsel must contemporaneously object at trial to errors.  
People v. 
Garcia
, 165 Ill. 2d 409, 651 N.E.2d 100 (1995).  We must recognize that counsel may "waive" the right to raise certain errors in later proceedings by failure to object to those errors at trial. 
People 
v. Coles
, 74 Ill. 2d 393, 385 N.E.2d 694 (1979).  See generally, R. Spritzer, 
Criminal Waiver, Procedural Default and the Burger Court
, 126 U. Pa. L. Rev. 473  (1978).  Otherwise, counsel, by not giving the court the opportunity to prevent or correct errors at trial, will gain the advantage of obtaining a reversal through failure to act, either intentionally or inadvertently. 
People v. Carlson
, 79 Ill. 2d 564, 404 N.E.2d 233 (1980).  

     The plain error exception however, permits consideration of errors affecting substantial rights that were not brought to the attention of the trial court.  
People v. Mahaffey
, 166 Ill. 2d 1, 27, 651 N.E.2d 1055 (1995).  The plain error rule is a limited exception to the waiver doctrine which will preserve an issue for appellate review where an appellate court finds that the error is of such magnitude that the defendant was denied a fair trial or where the evidence is closely balanced. 
People v.
 Friesland
, 109 Ill. 2d 369, 488 N.E.2d 261 (1985).  In the present case, the plain error exception to the waiver doctrine is not applicable as any alleged error did not result in defendant being denied a fair trial.  Moreover, we do not find the evidence to be closely balanced; rather, the evidence overwhelmingly indicates the defendant's guilt.  

A similar situation was addressed in 
People v. Garcia
, 165 Ill. 2d 409, 427, 651 N.E.2d 100 (1995).  Defendant argued that the trial court erred when it only allowed seven peremptory challenges in violation of Supreme Court Rule 434(d) (134 Ill. 2d R. 434(d)), which requires that defendants in capital cases receive 14 peremptory challenges.  The supreme court indicated it need not reach the merits of defendant's peremptory challenge argument because defendant suffered no prejudice since defendant did not even use all seven of her peremptory challenges.  The court went on to note that, like the defendant in our case, there was no contemporaneous objection at trial when she received only seven peremptory challenges and thus the issue was waived.
  
Garcia
, 169 Ill. 2d at 427.  Even if defendant did not waive this argument and we were to consider this issue under the plain error doctrine, the trial court's decision must be affirmed.  

We are mindful that the denial or impairment of defendant's peremptory right is reversible error and a showing of prejudice to defendant is not necessary.  See 
People v. Bennett
, 282 Ill. App. 3d 975, 980, 669 N.E.2d 717 (1996).  However, the right to a fair trial and defendant's peremptory right are not denied or impaired "if the procedure affords both parties fair opportunity to detect bias or hostility on the part of prospective jurors, and if the procedure allows both parties a fair chance to peremptorily excuse any venireman."  
People v. Daniels
, 172 Ill. 2d 154, 165, 665 N.E.2d 1221 (1996).

Reversible error is found if the conduct of the trial court results in the selection of an unfair jury, not from defendant's exhaustion of his peremptory challenges.  See 
People v. Gleash
, 209 Ill. App. 3d 598, 568 N.E.2d 348 (1991). The denial of a peremptory challenge to the defendant does not violate the right to due process and to an impartial jury.  
Ross v. Oklahoma
, 487 U.S. 81, 89, 101 L. Ed. 2d 80, 90-91, 108 S. Ct. 2273, 2278-78 (1988).  In 
People v. Pendleton
, 279 Ill. App. 3d 669, 665 N.E.2d 350 (1996), the trial court held  that defendant was afforded a fair and impartial trial where defendant had to use peremptory challenges to excuse two jurors who should have been dismissed for cause. Our state constitution guarantees the right to an impartial jury.  
Pendleton
, 279 Ill. App. 3d at 676-77.  As such, the focus of the inquiry is on whether the jury selection process denied defendant his constitutional right to an impartial jury.  
 In this case, the jurors were selected in panels of four.  The parties selected the first and second panels without incident.  During selection of the first and second panels, the State used no peremptory challenges and defendant used five challenges.  For the third panel, the judge tendered four jurors to the State.  The State exercised one peremptory challenge.  The judge retendered a panel of four to the State, the State accepted the panel and tendered it to the defense.  The defense exercised its last two peremptory challenges on this panel.       The judge then called two additional venire members, bringing the panel back up to four, but did not tender the panel of four to the State.  In a sidebar, the State indicated that it would exercise one peremptory challenge on this panel.  The trial court indicated that this would not leave enough venire members to empanel four more jurors.  As such, the trial court dismissed the panel, returning to the State the one peremptory challenge used on the third panel and returning to defendant the two peremptory challenges defendant exercised on that panel. In so doing the trial judge restored to each side the same number of challenges it had used on the third panel. This in no way denied defendant due process because he received the number of peremptory challenges provided by the Code of Criminal Procedure, section 115-4(e)(725 ILCS 5/115-4(e) (West 1996).  
Pendleton
, 279 Ill. App. 3d at 675-77.  Furthermore, none of the venire members had been sworn in as jurors, since the selection process for the third panel was still ongoing.

     Defendant nevertheless contends that dismissal of the third panel resulted in the judge giving the prosecution the benefit of four extra peremptory challenges that were not available to the defense.  The record does not support this conclusion. Supreme Court Rule 434 allows both sides seven peremptory challenges, and the defendant and the prosecution each received seven peremptory challenges.  Illinois Supreme Court Rule 434 (134 Ill. 2d R. 434(a)) governs the selection of juries and provides that jurors shall be passed upon and accepted in panels of four "unless the court, in its discretion, directs otherwise."  Additionally, the supreme court rules and case law give the judge a great deal of discretion in the jury selection process.  
People v. Daniels
, 172 Ill. 2d 154, 164, 665 N.E.2d 1221 (1996).
  The determination of whether the denial or impairment of a defendant's rights has been established and therefore whether a new trial must be granted will depend upon the specific facts of each case.

     Not only do the facts of this case not support the defense conclusion that the trial judge gave the prosecution four more peremptory challenges than the defense, but even if this had occurred there would have been no prejudice to defendant.  While defendant used all seven of his peremptory challenges, plus the two that were restored after the third panel was dismissed, the prosecution used only two of its seven peremptory challenges.  If an additional four had been granted by the trial judge to the prosecution as theorized by the defense, a total of six peremptory challenges would have been used by the prosecution under this defense theory.  There could be no prejudice to the defendant since the prosecution received and used less than the number of peremptory challenges provided by law.

 We reject defendant's claim that he received fewer peremptory challenges than the prosecution and that the judge deprived him of a fair trial by dismissing the third panel of jurors. Here, defendant received the number of peremptory challenges provided by state law.  When the trial court dismissed the third panel, the court returned to both parties the number of peremptory challenges they had used on that panel.  We find no merit in defendant's contention that this resulted in the judge giving the State four extra peremptory challenges that were not available to the defense.  To the contrary, this restored both parties to the same position they were in before the selection of the third panel.  Both defendant and the State had a fair opportunity to peremptorily excuse any prospective juror and both had a fair chance to discover any bias or hostility on the part of the venire members. 
Moss
, 108 Ill. 2d at 276, citing 
Pointer v. United States
, 151 U.S. 396, 35 L. Ed. 208, 14 S. Ct. 410 (1894).  Defendant's rights were not affected by the dismissal of the third panel, nor did he suffer any prejudice.  
Garcia
, 169 Ill. 2d at 427.  Accordingly, we find that defendant's right to use peremptory challenges was not denied or impaired in any manner and defendant was afforded his constitutional right to an impartial jury.  
Garcia
, 169 Ill. 2d at 427.

    IV

Defendant's next contention is that his prior convictions for theft and burglary should have been excluded because their similarity to theft from the person and robbery would induce the jury to convict on propensity, rather than on the evidence.  The rule is well established that evidence introduced only to show a propensity to commit crimes is improper and inadmissible.  
People v. Williams
, 161 Ill. 2d 1, 39-40, 641 N.E.2d 296 (1994).

     The prosecution argued that these convictions were not offered to show a propensity to commit crimes, but were offered to impeach the credibility of the defendant.  Defendant exercised his right to testify at trial and, before the testimony, the trial judge decided whether defendant's prior convictions would be admitted to impeach the credibility of the defendant.  The judge ruled that only the most recent convictions for retail theft, theft, and burglary would be admitted in evidence, but defendant's convictions for battery and misdemeanor criminal sexual assault were not admissible under the case law of 
People v. Montgomery
 47 Ill. 2d 510, 519, 268 N.E. 2d 695 (1971), and 
Williams
.

      In 1971, the Illinois Supreme Court, in 
People v. Montgomery
, adopted the then-proposed Federal Rule of Evidence 609 regarding admissibility of prior convictions to impeach the credibility of a witness.  
Montgomery
, 47 Ill. 2d at 519; Fed. R. Evid. 609; see also M. Graham, Cleary & Graham's Handbook of Illinois Evidence §§609.1, 609.2 (6th ed. 1994); 1 J. Strong, McCormick on Evidence §42 (4th ed. 1992).

    Under the 
Montgomery
 rule evidence of a conviction is inadmissible if a period of more than 10 years has passed since the date of conviction or release of the witness from confinement, whichever is later. 
Montgomery
, 47 Ill. 2d at 516.  In addition, evidence of a conviction not excluded by the 10-year rule is admissible according to the following three-prong test: (1) the crime was punishable by death or imprisonment in excess of one year; or (2) the crime involved dishonesty or false statement regardless of the punishment; and (3) the probative value outweighs the prejudicial impact.  If either of the first two prongs is satisfied, then the third prong requires a judicial balancing.  The trial judge must weigh whether the probative value of the evidence of the crime is outweighed by the danger of unfair prejudice.

     Recently the Illinois Supreme Court in 
People v. Williams
, 173 Ill. 2d 48, 82, 670 N.E. 2d 638 (1996)(
Frank Williams
), reaffirmed the critical need for application of the balancing test while clarifying comments it made about the 
Montgomery
 rule in the case of 
People v. Williams
, 161 Ill. 2d 1, 641 N.E.2d 296 (1994)(
Eddie Williams
): 

"We hold that [
Eddie
] 
Williams
 does not alter the three-prong rule set 

forth in 
Montgomer
y.  Rather, this court in [
Eddie
] 
Williams
 was expressing concern about the indiscriminate admission of all prior felony convictions for impeachment purposes absent application of the critical balancing test mandated by 
Montgomery
."  
Frank Williams
, 173 Ill. 2d at 82.

     A prior felony conviction is admissible under the first prong of the 
Montgomery
 rule because the common law tradition which generated 
Montgomery
 and Federal Rule 609 "rest on the common-sense proposition that a person who has flouted society's most fundamental norms, as embodied in its felony statutes, is less likely than other members of society to be deterred from lying under oath in a trial by the solemnity of the oath, the (minuscule) danger of prosecution for perjury, or internalized ethical norms against lying."  
Campbell v. Greer
, 831 F.2d 700, 707 (7th Cir. 1987).  Crimes of dishonesty that satisfy the second prong of the 
Montgomery
 test are admissible, as they are probative of truthfulness. 
People v. Woodard
, 276 Ill. App. 3d 242, 244-45, 658 N.E.2d 55 (1995).

     Significantly under 
Montgomery
, when a prior crime satisfies either the first or second prong, it is admissible unless, after application of the judicial balancing test, the judge concludes that its probative value is outweighed by its prejudicial impact. In determining whether judicial balancing has occurred, it would be helpful if the record reflected an examination including but not necessarily limited to some of the following factors: (1) whether the prior conviction is veracity related; (2) the recency of the prior conviction; (3) the witness' age and other circumstances surrounding the prior conviction; (4) the length of the witness' criminal record and his conduct subsequent to the prior conviction; (5) the similarity of the prior offense to the instant offense thus increasing the danger of prejudice;  (6) the need for the witness' testimony and the likelihood he would forego his opportunity to testify; and (7) the importance of the witness' credibility in determining the truth. 
People v. Medreno
, 99 Ill. App. 3d 449, 452, 425 N.E.2d 588 (1981).  

If after application of the judicial balancing test the trial court then determines that prior conviction evidence is admissible, the judge should ask whether defense counsel wishes the judge to instruct the jury in accordance with Illinois Pattern Jury Instructions, Criminal, No. 3.13 (3d ed. 1992) (hereinafter IPI Criminal 3d).  This instruction should be given only at the request of the defense when there has been impeachment of the defendant by proof of a prior conviction.  See IPI Criminal 3d No. 3.13, Committee Note at 83.  

    Defendant relies on 
People v. Pruitt
 for the proposition that, when the previous conviction is one "corresponding closely" with the charge for which the defendant stands trial, it should be excluded because admission creates "an inevitable pressure on the jurors to believe that if defendant committed these crimes before, he probably did so this time, notwithstanding the State's admonishment to the contrary."  
People v. Pruitt
, 165 Ill. App. 3d 947, 952, 953, 520 N.E. 2d 867 (1988).

     The supreme court rejected this same argument in 
People v.
 Redd
, 135 Ill. 2d 252, 324-27, 553 N.E. 2d 316 (1990), where defendant moved to bar evidence of prior convictions for rape and attempted murder in defendant's double rape and murder trial.  
Redd
, 135 Ill. 2d at 324-27. A unanimous court dismissed the argument that the prior convictions were "so similar" that the prejudice outweighed the probative value with the simple conclusion that the trial judge had properly exercised the discretion envisioned under 
Montgomery
.  
Redd
, 135 Ill. 2d at 326.

The trial judge in this case rejected defendant's alternative request that the prior convictions, if admitted, should be unnamed and referred to merely as felonies.  The trial judge factored that request into the judicial balancing process and noted that defendant Robinson's convictions for burglary and theft were not only very recent, but, veracity related and probative as to credibility.

In a very similar case, 
People v. Grengler
, 247 Ill. App. 3d 1006, 617 N.E. 2d 486 (1993), the court rejected defendant's request that his conviction for theft, admitted as impeachment evidence in his robbery trial, be admitted as an unnamed prior conviction. The court indicated that because theft has been recognized as a crime of dishonesty and because the trial judge balanced the probative value against prejudice to the defendant the evidence was properly admitted. "Where a prior conviction involves a crime which is probative concerning defendant's  veracity and honesty as a witness, and the evidence was admitted solely for that reason, it is not mandatory that a conviction of the same type of crime that is charged in the case***be excluded." 
Grengler
, 247 Ill. App. 3d at 1014.

The record in this case reflects no special circumstances surrounding the prior convictions which would mitigate their probative value. Defendant also had prior convictions for battery and criminal sexual assault.  After hearing arguments from both counsel, the trial court engaged in judicial balancing and exercised judicial discretion as indicated by the following:

      "[THE COURT]: *** [T]he inflammatory nature of those convictions would outweigh the probative value and would tend to at least be significant to the jury that Mr. Robinson has a history of violence, which is one of the elements here, as opposed to a history of deceit or dishonesty which are two different things." 

     In further exercising its discretion, the trial court held that the jury would not be advised that these prior convictions were felonies.  Thus, as the result of judicial balancing, the jury only heard evidence of defendant's most recent convictions limited to the previous four years for burglary and theft, crimes involving dishonesty directly related to defendant's veracity, and properly admitted for the purpose of determining credibility.  Moreover, the trial court strictly limited the use of the prior convictions by providing the jury with an instruction limiting their evidentiary use.

Accordingly, it is clear from the record that the trial judge properly applied the 
Montgomery
 rule and weighed the probative value of the evidence against the danger of unfair prejudice. Based on the totality of the circumstances, we find that the trial judge has properly exercised the discretion envisioned under 
Montgomery
 in applying the balancing test recognized as critical by the supreme court in 
Frank Williams
, 173 Ill. 2d at 82.

V

Defendant next contends that the trial court erred by sentencing him to 15 years' imprisonment without referring him for a Treatment Alternatives to Street Crime (TASC) evaluation because defendant's presentence investigation report revealed that he had smoked marijuana daily for the previous 14 years. 

Section 40-5 of the Alcoholism and Other Drug Abuse and Dependency Act (the Act) provides, in relevant part, as follows:

"Election of Treatment.  An addict or alcoholic who is charged with or convicted of a crime may elect treatment under the supervision of a licensed program designated by the Department, referred to in this Article as 'designated program', unless:

(1)  the crime is a crime of violence[.]" 20 ILCS 301/40-5 (West 1996).

Here, defendant was found guilty of robbery. Defendant was not seeking any kind of drug treatment for a dependency or addiction problem.  Based on the totality of the circumstances, the court found defendant ineligible for a treatment program under the Act and sentenced defendant in the standard fashion.   We find that defendant was indeed ineligible for treatment under the Act.  The legislature specifically included robbery in its list of ineligible offenses for TASC.  Section 40-5 of the Act provides that an addict who is charged with or convicted of a "crime of violence" may not elect to enter a treatment program under the Act.  20 ILCS 301/40-5 (West 1996).  Section 1-10 of the Act states as follows:  " 'Crime of violence' means any of the following crimes: *** robbery *** or any other felony which involves the use or threat of physical force or violence against another individual."  20 ILCS Ann. 301/1-10 (Smith-Hurd 1998).  Thus, not only is robbery specifically delineated as a violent crime making defendant ineligible for a treatment program, but there is evidence in the record that defendant effectuated the robbery by use of physical force.  Defendant pushed the victim to the ground and grabbed the victim's wallet from his back pocket, ripping the victim's jeans in the process.

We note that, at the sentencing hearing, defendant denied having a substance abuse problem.  The court also found that defendant was not likely to be rehabilitated, stating, "Hardly a year goes by, Mr. Robinson, that when you have not been in custody you have not been convicted of a serious offense, either a crime of violence or a burglary or a theft case. *** You have a history of being a chronic law breaker."   

A trial court has broad discretion to determine whether a defendant is eligible to participate in a treatment program under the Act and its determination will not be reversed on appeal absent a showing that the trial judge acted in an arbitrary manner or abused his discretion.  
People v. Douglas
, 200 Ill. App. 3d 186, 188-89, 558 N.E.2d 614 (1990).  In light of all of the foregoing, we find that the trial court did not abuse its discretion in not referring defendant for a TASC evaluation at sentencing.

VI

Defendant submits that the trial judge abused his discretion in sentencing defendant to 15 years in prison.  He argues that, even in light of defendant's previous convictions, the sentence is excessively harsh because the amount taken from the victim was small and the victim was not injured during the robbery.

The sentence for a Class X felony is not less than 6 and not more than 30 years of imprisonment.  730 ILCS 5/5-8-1(a)(3) (West 1996).  Where a sentence is imposed within statutory limits, it will not be disturbed on appeal unless there has been an abuse of discretion.  
People v. Gutirrez
, 205 Ill. App. 3d 231, 564 N.E.2d 850 (1990).  Imposition of a sentence by the trial judge is entitled to substan­tial weight and deference, since the trial judge is in the best position to deter­mine the circumstances of the case, to weigh the credibili­ty of the witnesses, and to evaluate the record made at the hearing in aggravation and mitigation.  
People v. Burke
, 164 Ill. App. 3d 889, 518 N.E.2d 372 (1987).  In order to reach a reasoned determina­tion as to the proper sentence to impose, the circuit court must look to the particular circumstances of each case and take into consideration the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age.  
People v. Heredia
, 193 Ill. App. 3d 1073, 1083, 550 N.E.2d 1023 (1989).  

Here, the 15-year sentence imposed is well within the statutory guidelines for a Class X offender.  The record indicates that the circuit court heard all the testimony in aggravation and mitigation, and had an opportu­nity to review the presentence investigation report prior to imposing sentence.  The trial judge considered the fact that defendant had prior felony convictions; the most recent for burglary and theft.  Although defendant contends that the circuit court failed to give proper consideration to the fact that defendant only took a small amount of money from the victim and did not injure him, a court is presumed to have considered the evidence of mitigation before it.  
Burke
, 164 Ill. App. 3d at 901; 
People v. Partin
, 156 Ill. App. 3d 365, 373, 509 N.E.2d 662 (1987).  Thus, we have no basis for concluding that defendant's sentence was an abuse of discretion.

Defendant next asserts that his conviction for theft should be vacated because it was predicated on the same facts as his robbery conviction.  

Here, the jury found defendant guilty of both theft and robbery.  However, the trial court merged the theft charge into the robbery charge and sentenced defendant "to fifteen years to the Illinois Department of Corrections on the charge of robbery."  The court did not sentence defendant on the theft charge.  As a result, the record and the mittimus reflect a conviction and sentence for robbery only, not robbery and theft.

The judgment of the circuit court is affirmed.  As part of our ruling, pursuant to 
People v. Nicholls
, 71 Ill. 2d 166, 374 N.E.2d 194 (1978), and relevant statutory provisions (725 ILCS 5/110-7(h), 130/13 (West 1992); 55 ILCS 5/4-2002.1 (West 1992)), we grant the State's request and assess defendant $100 as costs for this appeal.  

In addition, pursuant to 
People v. Agnew
, 105 Ill. 2d 275, 473 N.E.2d 1319 (1985), and the Counties Code (55 ILCS 5/4-2002.1 (West 1996)), we assess defendant an additional fee of $50 for oral argument.

Affirmed.

TULLY and GALLAGHER, JJ., concur.