THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL P. McCORMICK, Defendant-Appellant.

Second District    Nos. 2—00—1250, 2—00—1256 cons.

---

Opinion filed March 21, 2002.

Lawrence D. Wechter, of Law Office of Larry Wechter, of Geneva, for appellant.

Timothy J. McCann, State's Attorney, of Yorkville (Martin P. Moltz and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

After a jury trial, defendant, Michael P. McCormick, was found guilty of the unlawful possession of less than 15 grams of a substance

containing cocaine (720 ILCS 570/402(c) (West 2000)), driving under the influence of alcohol (625 ILCS 5/11—501(a)(2) (West Supp. 1999)), and failing to yield while entering a highway (625 ILCS 5/11—906 (West 2000)). The trial court sentenced him to 18 months' probation conditioned on, among other things, spending four weekends in jail. On appeal, defendant argues that the trial court's use of a "struck jury" system infringed on his right to peremptory challenges. We affirm.

The record contains no report of the jury selection proceedings. The common-law record reveals that the venire consisted of 46 people. Each party submitted a list of seven peremptory challenges. Three prospective jurors appeared on both lists. As a result, only 11 prospective jurors were dismissed.

After defendant appealed, the trial court conducted a hearing to certify a bystander's report. See 166 Ill. 2d R. 323(c). The testimony received during the hearing reveals that the trial court utilized a "struck jury" system. See *United States v. Ricks*, 802 F.2d 731, 734-36 (4th Cir. 1986). During the hearing, Michael Poulakidas, the attorney who represented defendant during the trial, testified that the trial court assembled all of the prospective jurors in the courtroom. The trial court questioned them about whether they could be fair and gave counsel the opportunity to submit additional questions. Neither party submitted additional questions. Poulakidas testified that "I felt that the judge was thorough and *** I had my mind made up on my perempt[ory] [challenges] ***."

After the prospective jurors were questioned, the trial court directed the parties to submit their lists of peremptory challenges and asked if they wanted to challenge for cause any venire member. Each party submitted seven peremptory challenges. Poulakidas testified that he identified 13 prospective jurors whom he considered questionable. Of those 13, he picked the 7 whom he felt were the most objectionable. After both sides exercised their peremptory challenges, the clerk read the names of 12 of the remaining prospective jurors who would serve as jurors. Poulakidas did not know beforehand which 12 names would be called.

Of the six additional prospective jurors whom Poulakidas considered questionable, three were selected as jurors. Poulakidas did not challenge for cause any of the additional six and did not ask for more peremptory challenges. He could not recall whether the trial court allowed him additional peremptory challenges.

Eric Weis was the assistant State's Attorney who participated during the trial. He testified that the jury selection procedure was essentially as Poulakidas described. He added, however, that the trial

court told the parties they could have as many peremptory challenges as they wanted so long as there were at least 13 prospective jurors remaining. Weis typically tried to limit his challenges to seven. He recalled participating in at least one trial where defense counsel used more than seven challenges.

After the testimony concluded, the trial court summarized the procedure it had utilized for the previous 15 or 16 years. The court stated that, after the prospective jurors are questioned, the parties "are asked to use their peremptory challenges. They can write down any number they want. It's customary for me to say, however, they can put down as many as they want *** as long as I have 12 jurors and *** an alternate ***." During an earlier hearing, the trial court remarked that, "regarding peremptory challenges, my position is and has always been, as I stated for counsel, that you could have as many *** as you want as long as I still have 12 jurors left." From the list of prospective jurors who survive this process, the clerk randomly selects 12 names.

Defendant's sole contention on appeal is that the jury selection procedure impaired his right to peremptory challenges. According to defendant, because he and the State were required to exercise their challenges contemporaneously and because the challenges were directed against the entire 46-person venire, the number of challenges he was able to exercise effectively was reduced.

■■ The State is correct that defendant has waived the argument because he never objected during the trial. Defendant was required to object during the jury selection process. *People v. Robinson,* 299 Ill. App. 3d 426, 436 (1998). Otherwise, by not giving the trial court the opportunity to prevent or correct trial errors, a defendant could gain the advantage of obtaining a reversal through an intentional or inadvertent failure to act. *Robinson,* 299 Ill. App. 3d at 437. The plain error rule is an exception to the waiver doctrine and permits the consideration of errors affecting substantial rights. It is a limited exception that will preserve an issue for review where the evidence was closely balanced or the error is of such a magnitude that the defendant was denied a fair trial. *Robinson,* 299 Ill. App. 3d at 437.

■ The jury selection procedure here did not deny defendant a fair trial. Supreme Court Rule 434 governs jury selection and provides:

"(a) Impaneling Juries. In criminal cases the parties shall pass upon and accept the jury in panels of four, commencing with the State, unless the court, in its discretion, directs otherwise ***.

* * *

(d) Peremptory Challenges. A defendant tried alone shall be allowed 14 peremptory challenges in a capital case, 7 in a case in

which the punishment may be imprisonment in the penitentiary, and 5 in all other cases." 134 Ill. 2d R. 434.

■ Rule 434(a) expressly grants a trial court the discretion to alter the traditional procedure for empaneling juries so long as the parties have adequate notice of the system to be used and the method does not unduly restrict the use of peremptory challenges. *People v. Moss*, 108 Ill. 2d 270, 275 (1985). The right to peremptory challenges is one of the most important rights granted to an accused, and its denial or impairment is reversible error without a showing of prejudice. *Swain v. Alabama*, 380 U.S. 202, 219, 13 L. Ed. 2d 759, 772, 85 S. Ct. 824, 835 (1965). *Swain* does not mandate an unbounded peremptory right, however. *Moss*, 108 Ill. 2d at 276. The right to peremptory challenges is not denied or impaired if the procedure affords both parties a fair opportunity to detect bias or hostility and to excuse any objectionable venire member. *People v. Daniels*, 172 Ill. 2d 154, 165 (1996).

■ Defendant has failed to demonstrate that his peremptory right was impaired. First, we note that the absence of a record of the jury selection proceedings makes it very difficult for defendant or this court to identify specifically how defendant's peremptory right may have been impaired. As the appellant, defendant has the burden to present a sufficiently complete record to support a claim of error, and any doubts that arise from the incompleteness of the record will be resolved against defendant. *People v. Little*, 318 Ill. App. 3d 75, 81 (2001). The record does not reveal that defendant's right to seven peremptory challenges was impaired. Defense counsel stated that he did not attempt to use more than the seven challenges he actually used or to have any venire member removed for cause. Defendant cannot identify a specific juror whom he was prevented from removing.

During the hearing to create a bystander's report, the trial court and the prosecuting attorney stated that the trial court informed the parties that they could use as many challenges as they wanted so long as there were enough venire members remaining to seat 12 jurors and an alternate. There is nothing in the record indicating that this was not the case. Defendant's trial counsel claimed that there were six additional potential jurors whom he wanted removed. According to the limited record before us, there was no reason why defense counsel could not have used additional peremptory challenges. Because there were 46 venire members, defendant could have removed the additional six questionable prospective jurors without approaching the trial court's limit.

Accordingly, we conclude that the jury selection procedure utilized here did not impair defendant's peremptory right. Defendant has not identified any error, much less plain error.

We note that a "struck jury" system is potentially rife with problems. Under the traditional process described in Rule 434(a), the parties exercise their challenges against jurors already seated in the jury box and who will remain on the jury unless challenged. Where, as here, the parties must exercise their peremptory challenges against the entire venire and the jurors are subsequently chosen randomly, a defendant may be required to waste his peremptory challenges on venire members who have virtually no chance of being selected for the jury. See *Ricks*, 802 F.2d at 733-34. Also, where, as here, the trial court requires the parties to submit their peremptory challenges simultaneously, the defendant may end up wasting peremptory challenges on prospective jurors that the State would have dismissed in the first instance.

Trial courts utilizing such a system must ensure that the process does not impair the defendant's peremptory right. A court possibly could avoid the problems noted above by limiting the size of the venire to the number of jurors required plus the authorized number of peremptory challenges or by explaining how the jury ultimately will be chosen, *e.g.*, in numerical order. *Ricks*, 802 F.2d at 736-37. Allowing the defendant the additional challenges needed to preserve the peremptory right also may be an option. Because the trial court here allowed an almost unlimited number of challenges and there is no indication that the court prevented defendant from removing an objectionable venire member, the problems just described were avoided here.

Accordingly, we affirm the judgment of the circuit court of Kendall County.

Affirmed.

BYRNE and KAPALA, JJ., concur.